BOOKER
v.
BOWLES.

---

## BOOKER v. BOWLES.

One of two subscribing witnesses to a bond, being called to prove its execution, denied his signature: *Held,* that the other, if he could be procured, should be examined; but if he could not be found, secondary evidence might be resorted to.

If a subscribing witness deny his signature, the case stands in the same situation as if his name were not on the instrument.

APPEAL from the *Sullivan* Circuit Court.—*Bowles* was the plaintiff below, and *Booker* the defendant.

SCOTT, J.—Debt on bond. Defendant produced a counter bond to which there were two subscribing witnesses, one of whom denied his signature, and the other did not attend. Defendant then offered to prove the execution of the bond by other evidence, which was rejected by the Court. There was a verdict and judgment for the plaintiff.

The rejection of the evidence offered by the defendant, and the refusal of the Court to grant a new trial on that ground, are the only special errors assigned. This case cannot be distinguished, in principle, from one in which no subscribing witness appears. When the witness who was called denied his signature, the case stood in the same situation as if his name was not on the bond (1); and before the defendant could introduce

testimony of an inferior grade, it was his duty to use the same diligence to procure the attendance of the other subscribing witness, as if there had been, originally, but one witness to the bond; and the witness failing to attend, after such diligence used, he might have proved the execution of the bond by secondary evidence (2). This position is in conformity with the general rule, that the best evidence of which the nature of the case will admit must be produced. The cases of *Cunliffe* v. *Sefton*, 2 East, 183, and *Barnes* v. *Trompowsky*, 7 T. R. 261, are directly in point. We think, therefore, the evidence was correctly rejected, and that the refusal to grant a new trial was no error.

*Per Curiam.*—The judgment is affirmed, with 5 *per cent.* damages and costs.

*Tabbs*, for the appellant.

*Judah*, for the appellee.

(1) As to where the writing is considered to stand as if the subscribing witness's name were not on it, vide note to *Jones* v. *Cooprider*, Vol. 1. of these Rep. 47. In the case of *Swire* v. *Bell*, there cited, it is decided that if a witness be interested, at the time of attestation, the instrument stands as if it had never been attested. There is a case, however, in which it is held that if the party knowing the witness to be interested, request him to attest the instrument, he cannot afterwards object to him as incompetent. *Honeywood* v. *Peacock*, 3 Campb. 196. In a late case relative to the question of a witness's incompetency, who had become interested *after* the attestation, *Best*, C. J., observes.—This is an action upon a charty-party. *After* the execution of the instrument, the attesting witness was, by agreement with the plaintiff, admitted to a share of the profits which the plaintiff expected to derive from his bargain. An objection was taken to the competency of the witness, and his evidence was rejected. It was then proposed to prove his hand-writing: this proof was objected to and the objection allowed. The Court are of opinion that this evidence was properly rejected. There are many cases where a subscribing witness has acquired an interest *after* the execution of the instrument attested by him, in which it has been decided that proof of his hand-writing may be received to establish such instrument.

The hand-writing of a subscribing witness who has been appointed an executor or administrator, [*Godfrey* v. *Norris*, 1 Strange, 34, *Cunliffe* v. *Sefton*, 2 East, 183,] or has married the person to whom the instrument was given, [*Buckley* v. *Smith*, 2 Esp. R. 697,] has been allowed to be proved. We do not dispute the authority of any of those decisions; on the contrary, we should be disposed to extend the principle established by them to the case of a man entering into a partnership, and becoming interested in instruments by acquiring a share in the credits, and taking upon himself the responsibilities of the firm of which he becomes a member. Necessity requires that, in all these cases, such evidence should be received, as otherwise parties must lose the rights secured by the instruments attested, or forego accepting of situations most important to their welfare. It would be a hard thing, if the law were to say that a man should not become an executor or an administrator, or accept a beneficial partnership,

Nov. Term,
1827.
───────────
BOOKER
v.
BOWLES.

without giving up debts due to the estates in which he has acquired an interest.   But, in the present case, the witness has only  obtained  an interest in the contract which he was to prove, and that interest he derived immediately from the plaintiff, who proposed to call him:  the plaintiff cannot  complain that  his witness is disqualified, when he himself has been the cause of his disqualification.   The case of  *Forrester* v. *Pigou*, 1  M. & S. 9, is stronger than the present.   The plaintiff in that case gave the witness an interest after the cause of action accrued, without the privity of the defendant, and yet the Court would not allow the defendant to call him.   *Hovill* v. *Stephenson*, 5 Bing. 493.

If the witness subscribe his name without the knowledge or consent of the parties, the instrument must be proved as if his name were not there.   *M'Craw* v. *Gentry*, 3 Campb. 232.   So, if the name of a fictitious person be subscribed as a witness.   *Fassett* v. *Brown*, Peake, 23.

(2)  When the instrument stands as if the witness's name were not on it, it may be proved by some person who knows the party's hand-writing, or who was present at the time of execution.

The circumstance of the witness being dead, absent from the country, having become blind, &c., does not place the  instrument on  the same footing with one having no subscribing witness.   In such cases resort is not had to a person acquainted with the party's hand-writing, or who saw him execute the instrument;  but it is the hand-writing of the witness that is then to be proved.

In the note to *Jones* v. *Cooprider*, referred  to in the above note, a question is suggested, whether proof of the signature of the subscribing witness, when admissible, is *prima facie* sufficient, without proof of the  signature of the party, or other evidence of his identity.   The doubt was raised, in consequence of the following remarks of *Bayley*, J.—"It is laid down in Mr. Phillips' Treatise on the Law of Evidence, that proof of the hand-writing of the attesting witness is in all cases sufficient.   I always felt this difficulty, that that proof alone does not connect the defendant with the note.   If the attesting witness himself gave evidence, he would prove, not merely that the instrument was executed, but the identity of the person so executing it;  but the proof of the hand-writing of the attesting witness establishes merely, that some person assuming the name which the instrument purports to bear, executed it;  and it does not go to establish the identity of that person, and in that respect the proof seems to me defective."  *Nelson* v. *Whittall*, 1 B. & A. 21.

Since that opinion, expressed by *Bayley*, J., in 1817, the subject has been mentioned in the *English* Courts.   In a case, in 1827, an agreement was offered in evidence on proof of the hand-writing of the subscribing witness who was dead.   It was objected that this was insufficient, without proof of the defendant's hand-writing, or some proof that he was the party whose signature the witness had attested; and for this was cited the above-mentioned opinion of *Bayley*, J.   But *Tenderden*, C. J. said, that the practice had been otherwise; that he had frequently admitted such evidence; and that he should continue to do so until his opinion was corrected.   *Page* v. *Mann*, 1 Moody & Malkin, 79.

In a case, in 1828, a power of attorney was offered in evidence on proof of the handwriting of the subscribing witness who was dead.   This was objected to, and the above-named opinion of *Bayley*, J. was cited.   *Best*, C. J.—"I have a great respect for the opinion of my brother *Bayley*, but I think I am bound in such a case to act as my predecessors have done.   It has been the uniform practice only to prove the handwriting of the attesting witness, and I am of opinion that it is the most convenient

course. I consider that mode as most desirable which tends to diminish the number of witnesses. *Kay* v. *Brookman*, 3 Carr. & Payne, 555.

There is another case, in 1828 in which a bond signed only by the defendant's mark, was offered in evidence. The subscribing witness had been subsequently appointed an executor of the obligee, and was now the plaintiff in the suit. The witness's hand-writing was proved, and some slight evidence given of the party's identity. The defendant objected to the admission of the bond in evidence. *Tenterden*, C. J. —There is some evidence here beyond the mere proof of the attesting witness's signature. But, if there were no other, I should have no doubt of its sufficiency. If the objection were to prevail, it would often be impossible for the obligee of a bond to recover, when the subscribing witness was dead; and the obligor a marksman. *Mitchell*, Ex'or. v. *Johnson*, 1 Moody & Malk. 176.

In ejectment, in 1829, a lease purporting to have been signed by the mark of the party was offered in evidence. The proof was, the hand-writing of the subscribing witness and that he had gone abroad; and that the defendant had spoken of the term which he had under the lease. On this proof *Tenterden*, C. J. permitted the lease to be read. *Doe* v. *Paul*, 3 Carr. & Payne, 613.

In the note to *Jones* v. *Cooprider*, some of the cases are cited in which proof of the witness's hand-writing had been admitted on account of his absence. In one of those cases, *Crosby* v. *Percy*, the proof was admitted when diligent inquiry for the witness had been made at his usual place of abode, and information received that he had absconded to avoid his creditors. But a different doctrine has been since held. Affidavits were introduced to show, that the witness could not be found at his office where inquiries had been made for him; and that the report was, that he was keeping out of the way to avoid his creditors. *Parke*, J.—The general rule applicable to cases of this description must be strictly followed, viz. that an attesting witness must be called to prove the execution of a deed, or his absence must be well accounted for. Formerly proof of the hand-writing of an attesting witness was only admissible where such witness was dead; and I can remember the first deviation from that rule, where it was extended to cases where the party was abroad, or out of the jurisdiction of the Courts of this country; but I have never known an instance where his testimony has been dispensed with, to prove the execution of a deed, on an affidavit which merely stated, that it was believed he kept out of the way in order to avoid an arrest. But it has been contended, that proof of his hand-writing was admissible, if he kept out of the way at the instance of the defendant in the suit. It is manifest, however, on the face of the affidavits, that if he kept out of the way, it was on account of his own pecuniary distress and difficulties. *Burrough*, J.—It is quite clear that an attesting witness must be called to prove the execution of a deed, unless he be out of the jurisdiction of the Court, or kept out of the way at the instance of the defendant, or party charged in the suit. *Pytt* v. *Griffith*, 6 J. B. Moore, 538.

Evidence was offered of the subscribing witness's hand-writing, upon proof of his being dangerously ill, but it was rejected. *Ellenborough*, C. J.—I cannot dispense with the attendance of a witness who is still alive and within the jurisdiction of the Court, so as to admit evidence of his hand-writing in the same manner as if he were actually dead. No case has yet gone so far, and I am afraid to establish a precedent. It is difficult to determine when a patient is past all hope of cure. If such a relaxation of the rules of evidence were permitted, there would be very sudden indispositions and recoveries. When a witness is taken ill, the party who would avail himself of his testimony, must move to put off the trial. If he be in a very dangerous condition, he will probably be dead before the ensuing sittings, and then evidence of his hand-writing may be received without any risk of collusion. *Harrison* v. *Blades*, 3 Campb. 457.

In the note above referred to, several cases are cited to show, that where a party producing a deed, under a notice to produce, claims under it a beneficial interest, the party calling for the deed need not prove its execution. Since that note was written, the following cases have been decided. In an action by a lessee against the assignee of a lease, the plaintiff having proved the execution of the counterpart of the lease, the defendant put in the original lease, which was produced by a party to whom he had assigned it: *Held*, that it was not necessary for the plaintiff to call the subscribing witness to prove the execution of the lease. *Burnett* v. *Lynch*, 5 Barn. & Cress. 589. In ejectment, the attorney for the lessor of the plaintiff obtained from one of the defendants a subsisting lease of the premises, to prevent the defendants from setting it up to defeat the action: *Held*, that this was a recognition of the lease as a valid instrument, and that when produced in pursuance of notice from the defendants, it might be read in evidence without proof of execution. *Doe* v. *Hemming*, 6 Barn. & Cress. 28.