PENCE, ADMINISTRATOR, *v.* MAKEPEACE 'ET AL.

LIFE INSURANCE.—*Policy on Husband's Life, for Benefit of His Wife, Belongs to Her.*—*Assignment of.*—An insurance policy, issued upon the life of a husband for the benefit of his wife, is her property, and an effectual assignment and delivery thereof to another, even during the lifetime of the husband, can be made only by her.

SAME.—*Assignment and Delivery*—*Interrogatory to Jury.*—Where the title to the proceeds of such an insurance policy is in issue, and an interrogatory is propounded to the jury as to whether or not such policy had been assigned and delivered (without specifying *by* whom,) to a third person, the

Pence, Administrator, *v.* Makepeace *et al.*

jury have a right to assume that the interrogatory is as to whether or not such assignment and delivery had been made by the person to whom the proceeds belonged, or by her agent, and they may properly answer accordingly.

SAME.—*Fraud.—Premiums Paid by Insolvent.*—Only on the clearest proof of fraud, if at all, can the premiums paid by an insolvent on a policy of insurance upon his life for the benefit of his wife and children be recovered by his creditors ; and in no event can any excess over the amount of the premiums so paid be recovered by them.

SAME.—*Denial of Assignment.—Non Est Factum.—Issue.—Insolvency.—Interpleader.*—A husband, upon whose life an insurance company had issued a policy for the benefit of his wife, having died, the insurance company, by a bill of interpleader, brought the money due on the policy into court, asking the court to determine to whom it belonged, and alleging that both the widow and a third person claimed to be entitled to the same. Whereupon the latter alleged title to the money under an assignment of the policy to him, by the wife and her husband, in writing, in the lifetime of the latter, to secure a debt due from him to such assignee, and that the policy, on which he had paid several premiums, was in his possession, to which she answered by a verified denial of the assignment.

*Held*, that the only issue between the claimants was as to the making of such assignment, and that the solvency of the husband when he procured the policy and paid the premiums thereon is not, and could not by either of them be put, in issue.

SAME.—*Title to Policy.—Assignment and Delivery by Husband, without Wife's Authority.—Possession.—Presumption.—Instructions.*—It was proper, under such issue, to instruct the jury, that such policy, when issued, belonged to the wife absolutely ; that "it could not be assigned or transferred * by her husband * without her authority ;" that, to prove the assignment claimed, the assignee "must prove, not only that she signed her name to the assignment, but must prove, also, that she either delivered, or authorized the delivery of, the policy ; " that "possession of the policy and payment of premiums upon it by" the assignee "could give him no right to it, even though it appeared to be assigned to him, if " the wife "had not signed the assignment or authorized" its delivery to him ; and that they could not presume that the wife had authorized her husband to make the assignment.

SAME.—There being no evidence that she had authorized another to sign her name to the assignment, it was not necessary to instruct the jury on that point.

EVIDENCE.—*Admissions.*—Verbal admissions or statements, consisting of mere repetitions of oral statements previously made, should be received as evidence with great caution ; but admissions deliberately made, and well understood, are entitled to consideration, especially when they are adverse to the interest of the party making them.

SAME.— *Testimony of Subscribing Witness.*—The testimony of a subscribing witness, in whose presence a written instrument purports to have been executed, is the best, but not the only, evidence of its execution.

PRACTICE.— *Supreme Court.*— *Objection to Evidence.*—*Leading Question.*—The objection, that a question put to a witness is leading, can not be made for the first time in the Supreme Court.

SAME.—*Alteration.*— *Question Assuming Fact to be Proved.*—A question put to a witness, as to whether or not he had caused a certain alteration apparent upon the face of a written instrument already in evidence, is not objectionable as assuming a fact yet to be proved.

SAME.—*Question rendered Harmless by Answer.*—An answer by a witness, disclosing his ignorance concerning a matter about which he is questioned, renders the question itself harmless.

INSTRUCTION.—*Blank.*—*Failure to Instruct Fully.*—An omission or blank left in an instruction, or an instruction covering part only of the facts, may be cured by asking an additional instruction or the filling of the blank.

SAME.— *Certiorari.*—*Harmless Error.*—*Amendment.*—Where a material part of an instruction is left blank in the record, a *certiorari* should be procured ; but a blank in an instruction, which does not mislead the jury, is harmless.

From the Hamilton Circuit Court.

*J. A. Harrison, A. G. Porter, N. P. Fishback, G. T. Porter, J. W. Gordon, R. N. Lamb* and *W. M. Shepard,* for appellant.

*M. S. Robinson* and *J. W. Lovett,* for appellees.

HOWK, J.—On the 17th day of February, 1875, the Connecticut Mutual Life Insurance Company filed, in the office of the clerk of the Madison Circuit Court, its complaint in the nature of a bill of interpleader against the appellee, Melissa C. Makepeace, and John E. Corwin, then the administrator of the estate of Allen W. Makepeace, deceased.

In this complaint the insurance company alleged, in substance, that theretofore, to wit, on the —— day of ——, upon the application of one James T. Makepeace, of Madison county, Indiana, and upon the payment by him, then and thenceforward to the time of his death, of certain annual premiums, said company executed upon the life of said James, and delivered to him for the benefit of the said Melissa, to whom the same was made payable, a certain

policy of insurance on the life of the said James, whereby, in consideration of the payment of said premiums in said application and policy stated, the said insurance company undertook, on the death of the said James, to pay to the said Melissa the sum of $5,000.00, which said policy, No. 38,193, was then in the hands of the said Corwin, who claimed ownership in the same, as thereinafter stated; that afterward, and during the lifetime of the said James, the said Melissa, for a valuable consideration and with the consent of her said husband, as was claimed by said Corwin, sold and assigned the said policy to one Allen W. Makepeace, then in life, who held the same, claiming title thereto, to the time of his death on the —— day of ——— ; that afterward the said Corwin was duly appointed, and qualified, as administrator of said Allen, and as such was then claiming of said insurance company the payment to him of said policy; that on the —— day of ———, the said James T. Makepeace died, whereby, upon the expiration of —— days, and upon due proof of said death, etc., the said sum of $5,000.00 became due and payable by said company to whichever party might in law be entitled thereto; that the said insurance company was then ready to pay said money; that the said Melissa then disavowed the making of said assignment and claimed the payment to her of said money, and forbade the payment to any other person; that each of the said parties so made and asserted claims to said money, in apparent good faith, and without any collusion or understanding whatever with said insurance company. Wherefore, as the said company was not advised as to who had the better right to said money, and in order that the said company might avoid any controversy in the premises, and that the Madison Circuit Court might award said money to the party entitled thereto, the said company brought said sum of $5,000.00 into court, and prayed that the court would make an order for the deposit of the same until the rights of the said parties were determined; that the said parties might

be required to interplead and settle their rights in the premises; that the said company might be discharged, with its costs, from further liability to either party in the premises; that, on rendering final judgment in the premises, the court would order the production and surrender of said policy, and for other proper relief.

This complaint or bill of interpleader was duly verified by the oath of the general agent, in this State, of the Connecticut Mutual Life Insurance Company.

Thereupon, on the 22d day of February, 1875, the said John E. Corwin, administrator of the estate of said Allen W. Makepeace, deceased, appeared in said cause and filed what is called his cross complaint therein against the appellee Melissa C. Makepeace, admitting the truth of the matters stated in the complaint or bill of said insurance company, and setting up his title to said policy of insurance. In said cross complaint it was alleged, among other things, that the said James T. Makepeace, on the —— day of ——, 1871, was indebted to said Corwin, as such administrator, in a large sum of money, evidenced by his three notes, particularly described, then justly due and wholly unpaid, the aggregate amount of which notes was more than double the amount of said policy of insurance; that (the said James T. Makepeace being then in full life) the appellee Melissa C. Makepeace, then the lawful wife of, and cohabiting with, said James T. Makepeace, in consideration and in part payment of said debt, and of one dollar to her paid by said Corwin, by and with the consent of her said husband, fully and completely transferred and assigned all her right, title and interest in said policy to the said Corwin, administrator, all of which was evidenced by her endorsement thereon, signed by her and said James T. Makepeace, and duly acknowledged before a justice of the peace, as appeared by his certificate thereto attached, a copy of which assignment and certificate was filed with said cross complaint; that, at the time of such endorse-

ment, the appellee Melissa C. Makepeace delivered said policy of insurance to said Corwin, for said purpose and consideration, and it was agreed, that, if he should pay any premiums then unpaid on the same, such premiums and those already paid by said administrator should be deducted from the sum realized on said policy, and the residue applied in part payment of said notes and debts, so owing as aforesaid by said James T. Makepeace; that said Corwin, as such administrator, and said Allen W. Makepeace, in his lifetime, paid certain specified annual premiums, at certain specified times; that all the said notes and premiums paid, with interest thereon, remained due and wholly unpaid, except by said transfer of said policy of insurance; that, ever since the said assignment, the said Corwin, administrator, had possession of said policy, and he offered to bring it into court and deliver it up to said insurance company upon the payment to him of the amount thereof, or as the court might thereafter award and adjudge, and he filed a copy of said policy with his cross complaint; that the said James T. Makepeace died on the 16th day of August, 1874, and the said Corwin, administrator, at an expense of $30, made sufficient proof to require the payment of said policy, and the said insurance company would pay the same to him if the appellee Melissa C. Makepeace did not pretend to hold an interest in said policy; and that the appellee Melissa C. Makepeace had no interest whatever in, nor right to, said policy or money. Wherefore the said John E. Corwin, administrator, asked judgment against the appellee Melissa C. Makepeace, that the said money belonged and should be paid to him for the use of the estate of said Allen W. Makepeace, deceased, by the said insurance company, and for other proper relief.

We give, in this connection, a copy of the alleged assignment of said policy of insurance, mentioned in and filed with said Corwin's so-called cross complaint, as follows:

" In consideration of the sum of one dollar to me in hand paid, and for other valuable considerations, I hereby assign, transfer and set over all my right, title and interest in policy No. 38,193, in The Connecticut Mutual Life Insurance Company of Hartford, to John E. Corwin, of Madison county, State of Indiana, this 30th day of December, 1871. (Signed,) MELISSA C. MAKEPEACE,
"J. T. MAKEPEACE."
" In presence of Wm. B. Dilts."

To this assignment, there was appended a certificate of acknowledgment by one R. J. Hall, described therein as a justice of the peace of Madison county, Indiana, in the ordinary form, to the effect that before him " personally came Melissa C. Makepeace and acknowledged the annexed assignment to be her free and voluntary act and deed." This certificate was dated on the 30th day of December, 1871, the date of said assignment.

The said John E. Corwin, administrator, and the appellee Melissa C. Makepeace appeared in open court at the March term, 1875, of the Madison Circuit Court, and mutually agreed of record, each with the other, that the said sum of five thousand dollars should be deposited by said insurance company, for safe-keeping, in the First National Bank of Indianapolis, and that, upon the filing with the clerk of said court of a proper certificate of deposit, payable to the order of the clerk of said court whenever ordered by the court, the said Connecticut Mutual Life Insurance Company should be fully discharged from all further liability as to said sum of money in controversy in this suit.

The appellee Melissa C. Makepeace answered the complaint of the insurance company and the cross complaint of said John E. Corwin, administrator, in a single paragraph, duly verified by her oath, wherein she admitted all the allegations of said complaint and all the allegations of said cross complaint, except so much of said cross com-

plaint as alleged the transfer and assignment of her right, title and interest, to the said John E. Corwin, administrator, in and to the said policy of insurance, or the acknowledgment thereof by her, or that she ever delivered the said policy of insurance to said Corwin, for the purpose and consideration alleged in said cross complaint, or for any other purpose or consideration, or that she made any agreement whatever with the said John E. Corwin, in relation to said policy of insurance, which allegations in said cross complaint she denied; and she further said, that she never assigned, delivered or endorsed, in writing or otherwise, the said policy of insurance to the said John E. Corwin, administrator as aforesaid or otherwise, and that she never authorized or empowered any other person to endorse, assign or transfer said policy to said John E. Corwin, as such administrator or otherwise; and that the said assignment was not her act and deed, and was never executed by her. Wherefore she asked judgment against the said John E. Corwin, in this action, that the money due upon the said policy of insurance should be paid to her, etc.

The said John E. Corwin having resigned his trust as administrator of the estate of said Allen W. Makepeace, deceased, and the appellant, John W. Pence, having been duly appointed and qualified as administrator *de bonis non* of said decedent's estate, on motion of said Pence he was substituted as a party to this action, in the room and stead of the said John E. Corwin, and on his further motion, supported by affidavit, the venue of the action was changed from the Madison Circuit Court to the court below.

In this latter court the cause was tried by a jury, and a general verdict was returned in favor of the appellee Melissa C. Makepeace; and with their general verdict the jury also returned into court their special findings as to particular questions of fact, submitted to them by the appellant, under the direction of the court, as follows:

" 1.   Was not policy No. 38,193, about which this suit has arisen, delivered to John E. Corwin, administrator of the estate of Allen W. Makepeace, deceased, as security for a debt from James T. Makepeace and Samuel Dusang to the said estate ?

" Ans.   No.

" 2.   At the time the said policy of insurance was delivered to said John E. Corwin, was not the written assignment endorsed thereon, with the signatures of James T. Makepeace and Melissa C. Makepeace thereunder written, and the certificate of R. J. Hall, justice, attached thereto as it now appears ?

" Ans.   No.

" 3.   Is not the copy of the said policy of insurance, and the assignment thereof, filed with the complaint in this cause, a correct copy of each of said documents ?

" Ans.   No.

" 4.   Did not James T. Makepeace, deceased, deliver to said John E. Corwin, along with said policy and assignment thereof, a mortgage made by himself and Melissa C. Makepeace, as part security for the same debt owed by himself and Samuel Dusang ?

" Ans.   No.

" 5.   Did not Melissa C. Mak. peace sign and acknowledge the mortgage, delivered at the same time with the policy to said Corwin ?

" Ans.   No.

" 6.   Did not Melissa C. Makepeace sign and acknowledge the assignment upon the policy of insurance, before the same was delivered to said Corwin ?

" Ans.   No.

" 7.   Did not John E. Corwin, administrator, etc., pay the last three premiums paid upon the said policy of insurance ?

" Ans.   Yes.

" 8. Is there not still due, upon the indebtedness of James T. Makepeace and Samuel Dusang, for which they executed their notes on the 30th day of December, 1871, including the amount paid as premiums on said policy, and interest, the sum of $6,806.51 ?

" Ans.   No."

The appellant moved the court in writing for a new trial, which motion was overruled, and to this decision he excepted.   The court then rendered judgment upon and in accordance with the general verdict, that the appellee Melissa C. Makepeace was entitled to said sum of five thousand dollars, the amount of said policy of insurance, and that the appellant had no right, title, interest or claim in or to the said policy, or said sum of money, or any part thereof, and that said appellee recover of the appellant her costs in this suit expended, etc., to all of which the appellant objected and excepted, and has appealed therefrom to this court.

The only error assigned by the appellant, in this court, is the decision of the court below in overruling his motion for a new trial.   Many causes were assigned by the appellant for such new trial ; but of these we will only consider such as his learned counsel have presented and discussed in their brief of this cause in this court, and this we will do in the same order in which his counsel have presented them.

The appellant's attorneys have criticised, at great length and with some severity, the special findings of the jury, in answer to the appellant's interrogatories.   We do not propose to follow counsel through this criticism, nor to comment thereon in this opinion.   We may say generally, that it has seemed to us, from our examination of the record of this cause, that the answers of the jury, complained of by counsel, were brought out by the remarkable character of the interrogatories to which the jury were required to respond.   These interrogatories were adroitly and skilfully

prepared, by counsel learned in the law and experienced in its practice. The phraseology thereof, and the words used therein, were such that the interrogatories might convey a two-fold meaning; especially so where an allusion is made or implied to an assignment of the policy of insurance, and the alleged delivery of such assignment. Of course the word "deliver," as applied to a necessary part of the execution of every written instrument, means something more than the mere manual delivery of the instrument. The delivery of a writing, as a part of its execution, can only be made by a person lawfully authorized to execute the writing, or at least to make delivery thereof. With these views in mind, one can readily understand how an intelligent jury, if they believed, as they had the right to do, the appellee's evidence, might honestly and truthfully answer, as they did, the appellant's interrogatories, and why the appellant's attorneys should be so much dissatisfied, apparently, with the unexpected answers of the jury. Take, for example, the first interrogatory above set out, submitted to the jury by the appellant; the actual manual delivery of the policy of insurance to John E. Corwin, by some one, and perhaps as a security for the debt mentioned in the interrogatory, were unimportant and immaterial facts, which could have no possible bearing upon the proper decision of this cause, except upon the hypothesis that such delivery was made either by the appellee Melissa C. Makepeace, in person, or by some one thereunto by her lawfully authorized. The policy of insurance, prior to the alleged assignment thereof to John E. Corwin, was undoubtedly the property of Melissa C. Makepeace. This fact the appellant is in no condition to controvert, because it is one of the fundamental facts which constitute his cause of action in this case. If the appellee owned the policy, she alone could deliver it, in the sense of an assignment by delivery; and it is quite clear, we think, that the word " delivered " was used in that sense, in the first interrogatory. It seems

to us that the jury might well conclude, that the purpose of the first interrogatory was to ascertain whether they did not find that the policy of insurance had been delivered, that is, assigned by delivery, by the appellee to John E. Corwin. If the jury thus construed, as they well might, the first interrogatory, and if they believed, as they might, the appellee's evidence in regard to such delivery, then they might honestly and truthfully answer the interrogatory, as they did, in the negative.

What we have said in regard to this first interrogatory is applicable to the other interrogatories propounded by the appellant to the jury trying the cause. They were susceptible of a two-fold construction; they had a covert or implied meaning, which differed from their apparent meaning, and the jury had the right, we think, to ascertain the intent and purpose of the interrogatory if they could, and to answer it accordingly, but without doing violence to the language used therein.

We have failed to find, from our examination of the interrogatories and the answers of the jury thereto, and the evidence bearing thereon, that, as the appellant's counsel claim in argument, " There is such a mass of falsehood in the answers to these interrogatories, that they destroy confidence in the honesty of the jury's intention, and render all their findings not only doubtful but worthless. "

It is insisted in argument, by the appellant's attorneys, that the court erred in permitting the appellee to propound the following question to a witness in her behalf: "Did you change the date in the mortgage? Is that your blurring there and blotting? "

The appellant objected to this question, " on the ground that counsel assumed that an obliteration had taken place, without any proof." In this court, the appellant's counsel object to the question, because " it is directly leading." It is a sufficient answer to this objection to say, that it was not made in the court below, and it cannot be made for the

first time in this court. This rule is so well settled that we need not cite authorities in its support. As to the objection to the question made in the circuit court, it may be said, that, as the mortgage mentioned was in evidence, of course the blur or blot therein was also in evidence, and afforded, perhaps, the very best proof that could be made of such blur or blot. We think that the appellant's objection to the question propounded was not well taken; and we would not have noticed it if counsel had not, in argument, insisted upon its validity with so much earnestness. Even if the ruling of the court had been erroneous, and certainly it was not, it seems to us that the error would have been harmless, for the witness answered the question objected to, as follows : " I can not say in regard to the change or blurring of that, Colonel ; I don't know about that." We fail to see how the ignorance of the witness, of the fact about which he was questioned, could possibly harm the appellant; and this court has always refused to reverse a judgment for a harmless error.

We pass now to the consideration of the instructions of the court, complained of by the appellant's counsel as erroneous. The claim of the appellant to the policy and money in controversy, it must be borne in mind, in considering the instructions, is founded exclusively upon an alleged assignment of the policy, by the appellee, to the said John E. Corwin. The only issue tendered by the appellee for trial, in this cause, was formed by her denial under oath of the execution by her of the assignment of said policy.

The third instruction, given by the court at the appellee's request, was as follows :

" 3.  The policy of insurance, being payable to Melissa C. Makepeace, vested in her alone the absolute ownership of it, and it could not be assigned or transferred to Corwin or any other person, by her husband or any other person, without her authority; and an assignment or delivery of

the policy to Corwin by the husband of the defendant, without her authority, would not bind her in any respect."

The appellant's counsel, in discussing the exception to this instruction, have assumed a position which is untenable by the appellant, in this case, under the allegations of his cross complaint. It is insisted by his counsel, that the instruction quoted was erroneous, because it informed the jury that the absolute ownership of the policy of insurance, being payable to the appellee, was vested in her; and that the policy could not be assigned or transferred to Corwin or any other person, by her husband or any other person, without her authority; and that an assignment or delivery of the policy to Corwin, by her husband, without her authority, would not bind her in any respect. It is very clear, we think, that this instruction clearly stated the law applicable to the case made by the allegations of the appellant's cross complaint. The argument of the appellant's counsel, against the instruction, is addressed to a case *dehors* the record of this cause. They insist, that, because the evidence on the trial showed that James T. Makepeace, the appellee's husband, was probably insolvent at the time he procured the issue of the policy and at the times of the payment by him of the several premiums thereon, then and subsequently as they became due, the premiums thus paid were fraudulent as against his existing creditors, of whom the appellant as the successor of Corwin was one; and that, as against such creditors, the appellee was not the absolute owner of the policy, but held it merely as a *quasi* trustee for the benefit of such creditors. It is enough for us to say, perhaps, in response to this argument, that it is not applicable to the case made by the averments of the appellant's cross complaint, and by the issue joined thereon. We need not and do not decide, in this case, what effect, if any, the alleged insolvency of James T. Makepeace might possibly have upon the appellee's title

to the policy of insurance or to the money derived therefrom; for that question was neither tried nor decided by the court below, in this case, nor is it presented by the record of this cause for our decision. The appellant had no standing in the circuit court, under the allegations of his cross complaint, and has none in this court, as the record comes before us, save and except under and by virtue of the alleged assignment of the policy of insurance, executed by the appellee, as the payee of the policy, to said John E. Corwin, as the predecessor of the appellant in his trust. As between the appellee and the appellant, under the averments of the cross complaint and the issue joined thereon, the absolute title and ownership of the appellee of, in, and to the policy of insurance, prior to and until the date of the alleged assignment thereof, were not and could not be called in question in this case; for the appellant, as well as the appellee, founded his title and claim to the policy, and to the money derived therefrom, upon the absolute ownership of the appellee of the policy in question, under and by reason of the fact that she was the payee or beneficiary named in the policy. Besides, where it appears, as it does in this case, that the policy of insurance has been procured and taken out by a husband and father upon his own life, and has been made payable to his wife, with the evident and only view and purpose of making suitable and necessary provision for the comfort, support and maintenance of his wife and family, after his removal by death, we would hesitate long, and the proof that the premiums paid were grossly fraudulent, as against existing creditors, would have to be clear and convincing, before we could be induced to hold and decide that the proceeds of the policy, or any part thereof, might be diverted from the beneficiary named in the policy, and applied to the payment of the debts of the assured. The procurement of a policy of life insurance, as a provision for the family of the assured in the event of his

death, and the payment of premiums thereon, by a person insolvent or of limited means, whose wife and family may be dependent upon him and his labor for the comforts and even the necessaries of life, are acts to be fostered and encouraged by the law.   For these acts are not hostile to, but we think are in full accordance with, those provisions of our law, which bear upon the rights and duties incident to the family relation.   Society can not be benefited by the abject poverty or destitution of any family; but, on the contrary, its welfare or well-being is largely dependent upon the welfare or well-being of each and every family.

A necessary provision for his own household is a duty enjoined upon every man, by divine as well as human law, and unless the acts of a party, in making such provision as was made by James T. Makepeace in the case now before us, are clearly and grossly fraudulent, we would be very loth to divert such provision, or any part thereof, from the purpose for which it was intended, and, leaving the widow and the orphan destitute, apply such provision, or a part thereof, to a purpose never contemplated.   If, however, it were conceded, which we do not concede, that the creditor of the assured might, in any case, institute and maintain an action for the recovery of any part of the amount of a policy of insurance, procured by an insolvent debtor upon his own life for the benefit of his wife or family, upon the ground that the premiums therefor were paid with money, which ought to have been applied to the payment of the debt of the assured to such creditor, and that such payment of such premiums by the assured was a fraud upon the rights of such creditor; we are clearly of the opinion, that the very utmost which the creditor could possibly recover in such action would be the aggregate amount of the premiums thus paid.   The creditor could not, in any event, derive a profit from, or recover aught more than, the sums of money actually paid by the debtor in premiums upon a policy of insurance upon his

own life, payable to or for the benefit of his wife, or any member of his family.

But we have digressed considerably from the consideration of the third instruction of the court to the jury trying the cause; not more so, however, than the appellant's counsel digressed, in argument, from the same subject.

We think that the instruction contained a correct statement of the law applicable to the case made both by the pleadings and the evidence, and therefore we hold that no error was committed by the court in giving this instruction.

The fourth and fifth instructions are complained of as erroneous, and are considered together, in argument, by the appellant's counsel, because, they say, " they imperfectly repeat each other, and so reiterate error." These instructions were as follows :

" 4. In order to prove an assignment of the policy to Corwin, by the defendant Melissa C. Makepeace, the plaintiff must prove, not only that she signed her name to the assignment, but must prove, also, that she either delivered, or authorized the delivery of, the policy to Corwin.

" 5. Possession of the policy, and payments of premiums upon it, by Corwin, either as administrator of said estate or otherwise, could give him no right to it, even though it appeared to be assigned to him, if the defendant Melissa Makepeace had not signed the assignment, or authorized its delivery to him."

The objection to the first of these two instructions, as we understand counsel, is rather a " play upon words," or the meaning of them, than an objection to the law of the instruction. The jury were informed, that, for the purpose of proving the alleged assignment of the policy by Melissa C. Makepeace, the appellant must prove, not only that she signed her name to the

assignment, but that she either delivered, or authorized the delivery of, the policy of insurance. The law of this instruction, that delivery is an essential part of the execution of any written instrument, is elementary law, which we do not understand that counsel question. It is objected, however, that the instruction was defective, because, while it informed the jury that the appellant must prove that the appellee " signed her name to the assignment," yet it omitted " all mention of, or allusion to, the possibility of her signing by another, that is, authorizing some one to sign for her." There are several good and sufficient answers to this objection. It was not necessary for the court to make " mention of, or allusion to, the possibility," when there was no evidence before the court and jury, tending to show that the appellee had ever authorized any one to sign " her name to the assignment." An effort was made by the appellant to show that the signature of the appellee's name to the alleged assignment of the policy was in her handwriting; but the appellant did not attempt to prove that the signature was in the handwriting of any one authorized by her to sign her name to the assignment. The fourth instruction of the court was applicable to and covered the case made by the evidence, on the point under consideration, and this, we think, was all that was necessary. Besides, the record shows that the court gave the jury every instruction asked for by the appellant; but it does not appear, that in these instructions, prepared by the appellant's learned attorneys, they made any " mention of, or allusion to, the possibility," that the appellee might have authorized some one to sign the assignment for her. If there had been evidence before the jury, tending, even remotely, to show that the " possibility " alluded to even verged upon probability, we can not doubt that the appellant's counsel would have requested the court, and that the court would have promptly complied with the request, to

instruct the jury, that, if the appellee's name was signed to the assignment by any one authorized by her to sign it for her, then it must be regarded as her signature. For this would have been merely an application to the case on trial of the old legal maxim, "familiar as a household word," of *qui facit per alium, facit·per se.* The fourth instruction of the court was not erroneous.

Of the fifth instruction, it is said by the appellant, that it is built upon the fourth instruction, which, we are told by his counsel, is a " bad foundation." As we have reached the conclusion, that the fourth instruction correctly stated the law applicable to the case and the evidence, we must regard it as a good foundation ; and, therefore, we think it is unnecessary for us to comment on the fifth instruction. It seems to us, that the court committed no error in giving the jury this instruction.

·The next instruction, complained of in argument, by the appellant's counsel is the seventh. This instruction contains a prefatory statement of fact, in regard to which the law is applied by the court in the remainder of the instruction. The only part of this instruction, of which complaint is here made, is this preface or prefatory statement, which reads as follows, in the transcript of the record on file in this court :

" There is a paper attached to the policy which purports to contain an acknowledgment of the execution of the —— policy of insurance, by the defendant, Melissa C. Makepeace, before R. J. Hall, a justice of the peace ; and then the court instructed the jury as to what it conceived to be the effect of such acknowledgment, as an instrument of evidence, if the jury should believe from the evidence in relation to such acknowledgment, that it was not attached to the policy at the time it was taken, and had no reference to it. but was afterward attached to the policy without the appellee's consent or knowledge."

It will be observed, that, in the above quotation from the seventh instruction, there is a blank or omission immediately preceding the words "policy of insurance," where they occur therein, and it is of this blank or omission in said quotation, that the appellant's counsel complain in this court. But we fail to see how, or wherein, the appellant could be possibly harmed by this blank or omission in the instruction. If the blank existed at the time the instruction was given, and the appellant believed that this blank or omission was prejudicial to his interests, he should have then asked the court to fill such blank. If the blank did not exist in fact, but simply occurred in transcribing the instruction into the record for this appeal, and the appellant believed that the omission would prevent him from properly presenting the question of the alleged error of the court, in giving the instruction, he should have applied to this court for a certiorari, and have thus procured a correct copy of the instruction. But the jury could not have been misled by this blank or omission in the instruction; for there was but one acknowledgment before R. J. Hall, a justice, attached to the policy, mentioned or referred to either in the pleadings or evidence, and that was the alleged acknowledgment by the appellee of her alleged assignment of the policy of insurance. It seems to us therefore, that this blank or omission in the seventh instruction, if it could be called an error was entirely harmless, and we have often decided that we will not reverse a judgment for a harmless error.

In the eighth instruction the court informed the jury, in substance, that they could not presume or infer that the appellee had given James T. Makepeace any authority to assign or transfer the policy to Corwin, from the fact that they were husband and wife; but that such authority must be proved by evidence. There was no error, we think, in this instruction.

The ninth instruction of the court was as follows:

Pence, Administrator, *v.* Makepeace *et al.*

"9. Verbal admissions or statements, consisting of mere repetitions of oral statements made some time ago, are subject to much imperfection and mistake, for the reason that the party making them may not have expressed his or her own meaning, or the witness may have misunderstood him or her, or, by not giving their exact language, may have changed the meaning of what was said; such evidence should, therefore, be received by the jury with great caution. But admissions deliberately made, and well understood, are entitled to your consideration, especially when made against a party's own interest."

The tenth instruction of the court also relates to the subject of verbal admissions and statements of a party as evidence; and the substantial difference between it and the ninth instruction, we think, is, that the general rules of evidence in regard to verbal admissions, stated in the ninth instruction, are applied by the court in the tenth instruction to the alleged verbal admissions of the appellee, and the evidence in relation thereto. We are clearly of the opinion that the law on the subject of these instructions is clearly and correctly stated and fairly applied therein. The ninth instruction is almost a literal copy of section 200 of 1 Greenleaf Evidence, which has often been approved and recognized as law in the decisions of this court. *Hill* v. *Newman*, 47 Ind. 187 ; *McMullen* v. *Clark*, 49 Ind. 77.

The eleventh instruction also relates to the same subject, and, like the tenth, is merely an application of the general rules of law stated in the ninth instruction to the evidence before the court and jury in this case. In our opinion the court did not err in either of these three instructions.

In the thirteenth instruction, the court stated the law on the subject of an attesting or subscribing witness, as follows :

"13. The assignment, endorsed upon the policy of insurance, introduced in evidence, appears to be attested by

Willim B. Dilts, as a subscribing witness. The testimony of a subscribing witness, in whose presence a written instrument purports to have been executed, is the best evidence of the execution of the instrument, but is not the only evidence that may be given of its execution."

The fourteenth and fifteenth instructions relate to the same subject, and are to the same effect. There can be no doubt, we think, that the instructions correctly state the law, in regard to the subject-matter thereof. *Jones* v. *Cooprider*, 1 Blackf. 47, and notes; *Booker* v. *Bowles*, 2 Blackf. 90, and notes.

Only one other question is discussed by the appellant's counsel in their argument of this cause in this court, and that is the sufficiency of the evidence to sustain the verdict. It can not be questioned, we think, but that there was evidence introduced which tended to sustain the verdict. As we have seen, the only question for trial was, whether or not the appellee had ever executed the written assignment, under which the appellant claimed title to the policy and money in suit. In her evidence, the appellee denied positively and unequivocally that she had ever executed any assignment of the policy. The attesting witness, whose name appeared at the foot of the assignment, testified that the appellee had never signed the assignment in his presence, and that he did not attest such assignment. The justice of the peace, before whom it was claimed that she had acknowledged her execution of the assignment, testified that she had never acknowledged before him the execution of the assignment of the policy. True, there was a mass of evidence introduced directly in conflict with the appellee's evidence; but it was the province of the jury to reconcile this conflicting evidence if they could, or otherwise to determine which of the witnesses were the more worthy of belief. Their conclusion on these points has resulted in a verdict for the appellee;

and this verdict, under the settled rules of this court, we can not disturb upon the weight of the evidence.

In conclusion, we hold that the court did not err in overruling the appellant's motion for a new trial.

The judgment is affirmed, at the appellant's costs.