May Term, 1838.

BOWSER
v.
WARREN.

---

## Bowser and Another *v.* Warren.

A patent for *United States'* land which appears to be signed by the president, countersigned by the commissioner of the general land office, and verified by the seal of that office, is admissible as evidence without proof of its execution.

A deed with subscribing witnesses is not admissible in evidence on proof of the grantor's hand-writing, unless the absence of the witnesses be accounted for, and due diligence have been used, without effect, to procure proof of their hand-writing.

A conveyance of real estate, purporting to be executed to the party offering it in evidence, is not admissible, though it appear to have been acknowledged and recorded, unless its execution be proved.

In an action of disseisin, it is not necessary to prove a notice to quit or a demand of possession, if there be no privity between the parties.

*Monday,*
*June 4.*

APPEAL from the *Morgan* Circuit Court.

DEWEY, J.—This was an action of disseisin. Verdict and judgment for *Warren* the plaintiff below.

On the trial in the Circuit Court, the plaintiff offered in evidence to the jury a patent from the *United States* for the premises in controversy. The patent appears to be signed by the president, countersigned by the commissioner of the general land office, and verified by the seal of that office. No extrinsic evidence of its execution was adduced. The defendants

objected to its admissibility, but their objection was overruled and the patent was given in evidence. This is assigned as error.

We think the decision of the Circuit Court is correct. In the case of *Harris* v. *Doe*, dem. *Barnett et al.*, at the last term of this Court, we held that the seal of the general land office is a public seal, and stands on the footing of the seal of a Court of record. In this character it implies verity, and is, of itself, sufficient proof of the due execution of any instrument to which the law requires its annexation.

The plaintiff also produced, and offered in evidence, a deed purporting to be executed by one *Ferguson*, and to be attested by two witnesses, conveying the litigated land to the plaintiff. At the time of presenting the deed, he proved that about two years before the trial, he had sent an agent (the witness who testified to the fact) to *Danville*, in *Vermillion* county, *Illinois*, to purchase the land described in the deed of *Ferguson*. The bargain was made, and the land paid for; a draft of the deed was made in the witness's presence, and afterwards, on the same day, when next he saw it, the deed was delivered to him at *Danville*, by *Ferguson*, with the names of the grantor and witnesses as it then appeared in Court. The witness knew nothing of the persons or residence of the subscribing witnesses. The plaintiff then offered, by another witness, to prove the hand-writing of *Ferguson:* the testimony was objected to, but the proof was made, and the deed given in evidence to the jury. The deed appeared to be duly acknowledged and recorded.

Two questions here present themselves. Was proof of the hand-writing of the grantor legal evidence of the execution of the deed? and if not, did the acknowledgment and recording of the deed supersede the necessity of other proof of its execution?

The rules of evidence involved in the first inquiry are well established. They are these: The execution of written instruments purporting to be attested by witnesses, when denied in a Court of justice, must be proved by at least one of the subscribing witnesses, if such witness can be had. When all the attesting witnesses are dead, resident in a foreign state, not to be found after diligent search and inquiry, kept out of the way by the adverse party, or are incapacitated from giving

testimony, resort may be had to secondary evidence,—the highest kind of which is the proof of the hand-writing of the subscribing witnesses, or of one of them. If such proof, after diligent search and inquiry, is found to be impracticable, evidence of the hand-writing of the person executing the instrument may be given, or his signature may be established by any person who happened to see it subscribed.

Proof of the execution in any one of the above modes in the order stated, is sufficient and needs no corroboration. *Barnes* v. *Trompowsky*, 7 T. R. 261.—*Call* v. *Dunning*, 4 East, 53. *Cunliff* v. *Sefton*, 2 East, 183.—*Adam* v. *Kers*, 1 B. & P. 360.—*Sluby* v. *Champlin*, 4 Johns. 461.—*Crosby* v. *Percy*, 1 Camp. 303.—*Clark's Lessee* v. *Courtney et al.*, 5 Peters, 319. 2 Blackf. 91, *n.* 1 and 2.—1 ib. 47, and notes.—*Wylde et al.* v. *Porter*, 1 Ad. & Ell. 742. We do not mean to say, however, that the above rules are applicable to every case,—such, for instance, as instruments produced under notice, the party producing claiming an interest under them—registered or enrolled deeds under certain circumstances—deeds which a party has acknowledged under seal—ancient deeds—instruments, the subscribing witness to which was incompetent at the time of attestation and trial—and deeds, the execution of which is denied by the subscribing witness.

We are aware, that the rule that the testimony of the subscribing witness is the best evidence of the execution of an instrument which the nature of the case will admit of, has been said, sometimes, not to be founded in good reason. But when we reflect, that at a very early stage of *English* jurisprudence, the witnesses attesting a deed were selected from the best men in the neighbourhood, and their names registered in the body of the deed; that when the deed was denied in Court, these witnesses necessarily constituted a part of the jury; that long after the latter feature of the law was dropt in the reign of *Edward* 2, down to the time of *Henry* 8, the witnesses were brought into Court by the same process which procured the attendance of the jury; we cannot be surprised at the adoption of the rule, nor that it was supposed to rest on the agreement of the parties, that the fact of the execution of the deed should depend upon the testimony of the persons thus selected to attest it. 1 Stark. Ev. 5 *Am.* from new *Eng.* ed. 5, note *e.*—3 Johns. 479. However this matter may be,

the law with the limitations as stated before, is now too firmly settled to be questioned.

The real difficulty, in this case, consists in determining whether the facts shown by the record, are sufficient not only to excuse the absence of the subscribing witnesses, but to dispense also with proof of their hand-writing.

Of the cases in which secondary evidence has been admitted, without clear proof to explain the absence of the subscribing witnesses, *Wallis* v. *Delancey*, 7 T. R. 262, *n.*, and *Jackson* dem. *Livingston et al.* v. *Burton*, 11 Johns. 64, are the strongest. The former was the case of a bond of 16 years' standing, executed in *New-York*. It appeared that *Rivington*, one of the subscribing witnesses, was resident in *New-York* at the time of the trial, and his hand-writing was proved. It was also proved, that a person of the same surname of the other subscribing witness had been living with *Rivington* in *America*, as his clerk, but he was not identified with the witness, nor was it shown that he was not in *England* at the time of the trial. Lord *Kenyon*, admitting the evidence not to be as perfect as it might have been, suffered the bond to go to the jury.

The case reported in *Johnson* related to the proof of a deed 44 years' old. It had two subscribing witnesses. One was proved to be dead, and his hand-writing was sworn to. The witness who stated these facts, testified that he had lived in the city of *New-York*, (where the deed was executed,) before and since the date of it, but knew nothing of the other subscribing witness. Ch. Justice *Kent* considered this fact, taken in connection with the great changes in the population of *New-York*, which had been wrought by the revolution since the date of the deed, as sufficient to raise a fair presumption that the testimony of the subscribing witness could not be obtained. The expression which he used, that "the rules and practice of Courts leave this point with some latitude of discretion," had relation to the strength of the proof required to account for the absence of a subscribing witness, and not to the right of a Court to dispense with his absence without a sufficient explanation.

It should be remarked that, in these cases, the hand-writing of one of the subscribing witnesses was proved. That was sufficient after having accounted for the absence of both.

But in the case before us no proof was given, or offered, of the hand-writing of either of the witnesses.   If we admit that their absence was sufficiently explained, by the fact that their names were on the deed when it was delivered in *Illinois* two years before the trial, to admit proof of their hand-writing; we can go no further.   It would by no means follow that the plaintiff could not have proved their hand-writing by proper diligence.   There is as much reason to suppose that *Ferguson* lived in *Illinois* as that the witnesses lived there.   Yet the plaintiff did actually prove his hand-writing.

A little inquiry might have led to information that these witnesses had emigrated from this state—an event not at all improbable—and thus the plaintiff might have found persons within the jurisdiction of the Circuit Court acquainted with their autograph.   Besides, *Danville*, in *Illinois*, lies within a few miles of our state line.   If the witnesses lived there, and they must be presumed to have lived there to justify their absence, testimony of their hand-writing might have been sought for almost in their very neighbourhood, without leaving our jurisdiction.   We do not mean, however, to prescribe the exact mode in which the plaintiff should have exercised diligence.   We only say, some attempt to procure testimony of the hand-writing of these witnesses, or at least of one of them, was necessary in order to let in proof of the hand-writing of the grantor, *Ferguson*.   The remissness of the plaintiff in this respect is not only inferible from what the record does not show, but the carelessness of his agent is positively proved. He received the deed for his principal without availing himself of the opportunity, which was in his power, of gaining some information respecting the attesting witnesses to it.

The case of *Barnes* v. *Trompowsky, supra,* is directly in point to the question which we are now considering.   In that case, the residence of the subscribing witness was at *Riga*, in *Russia*, both at the time of attestation, and of the trial, yet it was held that proof of his hand-writing could not be dispensed with, no diligence to obtain such proof having been shown.   The decision reported by *Peters, supra,* has also a strong bearing on this question.   The instrument to be proved in that case was a power of attorney, executed at *New-York* 30 years before the trial, which took place in *Kentucky*.   It had three attesting witnesses.   No further account was given

of them, nor was any diligence shown to prove their hand-writing. The Supreme Court of the *United States* held, that proof of the hand-writing of the maker of the letter of attor-ney was illegal.

We conclude, therefore, that the fact that the names of subscribing witnesses were affixed to a deed, which was de-livered in *Illinois* near the border of this state, is not, of itself, sufficient to authorise proof of their hand-writing to be dis-pensed with; and, consequently, that the Circuit Court erred in admitting evidence to prove the hand-writing of· the grantor.

It remains to answer the inquiry, whether the acknowledg-ment and recording of the deed made other proof of its execu-tion unnecessary?

The cases respecting the admissibility of the record or re-gistry of deeds, or the copies of them, without accounting for the absence of the originals or proving their execution, are very numerous and not at all uniform. From a general view of the authorities, we consider the rule of evidence most con-ducive to convenience in practice, and to the security of titles (excepting perhaps some cases of fraud) to be, that when a deed has been regularly admitted to record in the recorder's office, and is relied upon by a suitor not a party to it, and who cannot be presumed, from the nature of the conveyance, to have the custody or control of the instrument, the record, or a copy of it, is *prima facie* evidence, and proves the exe-cution of the deed without other testimony; but if the deed is made to the party who relies upon it, or may be presumed from its character to be in his keeping, or under his control, the original must be produced, if not lost or destroyed, and its execution proved.

A deed duly acknowledged and recorded comes within this rule, and is *prima facie* evidence without further proof of its execution, whenever the recorder's record, or a copy of it, would be evidence without the production of the original, and without explaining its absence. *Jackson* v. *Schoonmaker*, 4 Johns. 161.—*Eaton* v. *Campbell*, 7 Pick. 10.—*Scanlan* v. *Wright*, 13 id. 523.

The deed in this case was made immediately to the party who produced it; he was therefore bound to prove its execu-

May Term, 1838.

tion, as if it had never been acknowledged and recorded. Its admission was erroneous.

The Court below refused to instruct the jury, that to maintain his action, the plaintiff must have proved that he gave the defendants notice to quit, or that he demanded possession. There was no evidence showing any privity between the plaintiff and defendants, or either of them, and the instruction was properly refused.

Exceptions were taken to several other instructions, but as all the principles which they involve have been already considered, no further notice of them is necessary.

*Per Curiam.*—The judgment is reversed and the verdict set aside with costs. Cause remanded, &c.

*H. Brown* and *W. Quarles*, for the appellants.

*P. Sweetser*, for the appellee.