Carver *et al. v.* Carver.

Filed Sept. 25, 1884.

---

No. 8167.

CARVER ET AL. *v.* CARVER.

PLEADING.—*Demurrer.—Joint and Several.*—A demurrer which recites that "The defendants separately and severally demur to the first and second paragraphs of the plaintiff's complaint, and for cause of demurrer say that neither of said paragraphs states facts sufficient to constitute a cause of action against them," is a separate demurrer as to each paragraph, but joint as to the parties defendants.

SAME.—*Construction.—Defendant Named.*—Where a particular defendant is last named in a paragraph of a complaint, and in a succeeding paragraph the words "the said defendant" are used, without other designation, it will be held that the reference is to the defendant last named.

REAL ESTATE, ACTION TO RECOVER.—*Complaint.—Husband and Wife.—Deed. —Conspiring to Defraud Wife.—False Pretence.—Mortgage.—Claim of Title. —Forged Deed.—Copy.—Particulars of Adverse Title.*—A complaint, which alleges that while the plaintiff was a married woman, the defendant knowing her husband to be of weak mind, confederated with him and a justice of the peace to induce her to execute a deed to property, the legal title of which was in her husband, but the equitable title in her, of which the defendant had knowledge, under the pretence of taking a mortgage to save the land to her, and to save her husband from arrest and imprisonment, which pretence was false, and alleging that defendant had possession of the land and claimed title under a deed, which as to her was a forgery, and asking that the land be reconveyed to her and damages be adjudged for its detention, states a good cause of action against the defendant. It was not necessary to file a copy of the deed, nor was it necessary to set out the particular title claimed by other defendants who asserted title under such deed.

| 97 | 497 |
|---|---|
| 125 | 188 |
| 125 | 556 |
| 126 | 109 |
| 126 | 432 |
| 97 | 497 |
| 130 | 331 |
| 97 | 497 |
| 132 | 88 |
| 97 | 497 |
| 134 | 71 |
| 135 | 618 |
| 97 | 497 |
| 142 | 513 |
| 143 | 77 |
| 143 | 436 |
| 97 | 497 |
| 146 | 389 |
| 97 | 497 |
| 151 | 182 |
| 97 | 497 |
| 157 | 215 |
| 97 | 497 |
| 161 | 355 |
| 97 | 497 |
| 163 | 386 |
| 97 | 497 |
| 164 | 452 |
| 97 | 497 |
| 168 | 269 |
| 168 | 365 |
| 97 | 497 |
| 169 | 534 |

Carver *et al. v.* Carver. ·

SAME.—*Possession.*— *Quieting Title.*—*Widow.*—*Verdict.*—Where one paragraph of a complaint is for possession of real estate, and a second paragraph is to have the title quieted, and the facts alleged show the plaintiff to be entitled to claim as widow in land sold by her husband, the jury may find the plaintiff has title and is entitled to possession of one-third part thereof, and that her title be quieted as to such third, although the complaint asserts ownership in all and asks to have such title quieted.

SAME.—*Defence.*—*Evidence.*—Where, in a suit for possession, the defendants answer by denial and make defence, if is unnecessary to prove possession, and if plaintiff prove title, defendants must show rightful possession.

DEED.— *Acknowledgment.*— *Record.*— *Evidence.*— *Denial of Execution Under Oath.*—*Burden of Issue.*—Under our statutes since 1852, a certificate of the acknowledgment of a deed in proper form makes a *prima facie* case in favor of the execution of the instrument as to the parties themselves and innocent third parties, and its introduction, or a copy thereof certified, is authorized as evidence. When a denial of the execution is made under oath, the affirmative of the question of its execution is upon the party claiming under it, and the burden of the issue so remains until its establishment to the satisfaction of the jury by such proof as will withstand and overthrow all of the evidence to the contrary.

SAME.—*Personal Signing or by Agent.*—*Instruction.*-Where, under a denial of the execution of a deed, all the evidence is directed to the question of a personal signature, there is no error in the court so limiting its instructions to the jury. If instructions are desired upon the question of an execution by a person authorized to sign for the person appearing as grantor, it must be requested.

SAME.— *Finding.*— *Non-Execution.*— *Notice of Claim.*— *Innocent Holders.*—Where the finding of the jury is that the grantor in a deed did not execute the same, it is immaterial whether persons claiming under the grantee in the deed had notice of the assumed grantor's claim of title.

INSTRUCTIONS.—*Undisputed Facts.*—*Effect.*—Where the evidence establishes facts, about which there is no opposing evidence or controversy, the court may instruct the jury as to the legal effect of such facts, and that they make or fail to make a case for one of the parties.

NEW TRIAL.—*Joint Motion.*—A joint motion for a new trial will be overruled if not well taken as to all joining therein.

From the Madison Circuit Court.

*M. S. Robinson* and *J. W. Lovett*, for appellants.

*H. D. Thompson, T. B. Orr* and *W. March*, for appellee.

ZOLLARS, J.—Action by appellee in relation to real estate ; verdict in her favor, and over a motion for a new trial and other motions, judgment upon the verdict that she is the

owner, and entitled to the possession, of the undivided one-third of the real estate, and for $125 against appellant William Carver for the detention thereof.

Many alleged errors are argued as causes for a reversal of the judgment. The first is, that the court below erred in overruling the demurrer to the complaint, which is in two paragraphs.

It is contended that the defendants to the separate paragraphs are not the same, except, perhaps, William Carver. Each paragraph does not state a cause of action against all of the appellants. The complaint appears to have been amended. What the amendment was, does not appear, as the amended complaint only is set out in the record. The defendants to each paragraph are not separately set out. As we find the cause entitled in the record, all of the appellants are set out as defendants. All through the proceedings they were all treated as defendants. It was so in the demurrer, answers, motions for a *venire de novo*, for a new trial, and other motions. We can not say, therefore, that the entitling of the cause was the unauthorized work of the clerk in making up the record. That all of appellants were not mentioned in the body of the complaint, or that each paragraph does not state a cause of action against them all, does not show that they were not all parties defendants. They must all be treated as having been parties defendants in the trial court. Whether a cause of action is stated against all, is another question. There are twenty-four persons named as defendants, who are appellants here. In the first paragraph of the complaint, four of the appellants are specially named. As against these the pleader assumed to state a cause of action. As to those not so named there was no attempt to state a cause of action. In the second paragraph, fifteen of the defendants are specially named. As against these again, there was an attempt to state a cause of action, and again, as to those not named, there was no such attempt. The defendants thus

specially named in the different paragraphs are not the same, except William Carver, and, possibly, one of the Johnsons.

The averments of the paragraphs are such as to make it certain that neither states a cause of action against any of the defendants except those specially named therein.   Had the demurrer been several as to the defendants, it should have been sustained to each paragraph, as to all of them not so specially named.   If, on the other hand, the demurrer was joint as to the defendants, and the paragraphs state a cause of action against any one of them, it was properly overruled.   *Teter* v. *Hinders,* 19 Ind. 93 ; *Eichbredt* v. *Angerman,* 80 Ind. 208 ; *Axtel* v. *Chase,* 83 Ind. 546 ; *Campbell* v. *Martin,* 87 Ind. 577 ; *Trisler* v. *Trisler,* 38 Ind. 282 ; *Bennett* v. *Preston,* 17 Ind. 291.

The demurrer filed in this case is as follows :

" The defendants separately and severally demur to the first and second paragraphs of the plaintiff's complaint, and for cause of demurrer say that neither of said paragraphs states facts sufficient to constitute a cause of action against them."

This demurrer, we think, is separate as to each paragraph of the complaint, but clearly joint as to the parties.   The words " separately and severally " can not be applied both to the separate paragraphs and also to the defendants ; we think they apply only to the separate paragraphs.   Such would seem to have been the intent of the pleader.   The *" defendants "* demur, and the conclusion of the demurrer is that a cause of action is not stated against *" them."*   The demurrer is the same as if written, the defendants demur to the first and second paragraphs of the complaint, separately and severally, and for cause, state that neither of said paragraphs states facts sufficient to constitute a cause of action against them.

This brings us to the question of the sufficiency of the paragraphs of the complaint, as against any of the defendants.

As to the first, it is sufficient to say, in this connection, that whether or not it states a cause of action against all of the defendants, or all of those therein specially named, it at least makes a case against William Carver for the recovery of real

estate. As to him it is in strict compliance with the require-
ments of section 1054, R. S. 1881, which is the same as sec-
tion 595, code of 1852. The paragraph is, therefore, sufficient
to withstand the joint demurrer by all of the defendants.

The second paragraph is quite lengthy, tedious, and uncer-
tain in detail. The substance of it is as follows: In 1853,
appellee's father gave to her lands in Rush county, subject
to a small encumbrance, and conveyed it to a trustee, to be
held by him until her husband should pay off the encum-
brance, when the trustee should convey it to her. In 1854,
the trustee, with her consent, sold the land for enough to pay
off the encumbrance and $2,500 additional. In the same
year, her husband, Ira Carver, and appellant William Car-
ver, purchased land in Henry county, and paid for the same
with appellee's $2,500. With her consent, the money was
thus applied as an investment for her. The land in Henry
county having been sold, appellee's husband, acting as her
agent, for her use and benefit, purchased the land in contro-
versy, and paid for the same with the proceeds of the Henry
county land. By mistake, the deed for this land was not
made to appellee, but to her husband. In 1857, her hus-
band was of weak mind and financially embarrassed. Ap-
pellant William Carver, with knowledge of the husband's
condition, mentally and financially, and that appellee's money
paid for the land, and with the intent to cheat and defraud
her out of the land, confederated with the husband, and a jus-
tice of the peace, to get her to sign a deed to him, William
Carver. To accomplish this, they and each of them, and es-
pecially William Carver, represented to her that the husband
was overwhelmingly in debt, and that his creditors were
about to arrest and imprison.him; that he, William Carver,
was security for her husband for a large amount; that if she
would execute to him a mortgage upon the land to secure
him, he would save her husband from arrest and imprison-
ment, and save the land for her and her children, and that in
no other way could this be done. Believing and relying

upon these representations, all of which were false, and known to the parties to be false, she signed what they told her was a mortgage. She never made any deed to William Carver, and the deed under which he claims to hold the land is as to her a forgery. During all this time she was the wife of Ira Carver, and continued to be and to live with him as such until 1875, when he died. She had no knowledge of the deed until 1870.

It is averred that William Carver has had possession of the land for the last fifteen years, the rental value of which was five hundred dollars per year; that he has laid off a portion of it into lots as an addition to the town of Alexandria, and that certain named parties claim and pretend to own some of the lots. The prayer of the paragraph is that the deed be declared fraudulent and void; that Carver be compelled to reconvey, or that a conveyance be made by a commissioner; that she may recover damages " in the premises," and for all other proper relief. In this summary of the paragraph we have used the name of William Carver, as the defendant against whom the paragraph is specially directed. His name, however, is not mentioned, except where it is averred that she " never made a conveyance in fee simple to said William Carver," and that after the pretended conveyance to him, the " said William Carver " laid off a portion of the land into town lots, etc. Aside from these instances the averments are " the said defendant."

The paragraph seems to have been carelessly and loosely drawn, but taking its several averments together we think it sufficiently appears that William Carver is the " said defendant." William Carver is the defendant last named in the first paragraph. The " said defendant," in the opening and subsequent portions of the second, was doubtless meant to refer to him as the antecedent. It is the well settled doctrine that each paragraph must be sufficient of itself, and that it can not be made good by reference to another paragraph for substantial averments. It has been held, however, and we

think correctly, that it is not necessary to repeat the names of the parties in each subsequent paragraph, and that a reference may be made to them as the said defendant or defendants, or the said plaintiff or plaintiffs. *Thompson* v. *Edwards*, 85 Ind. 414. As William Carver is the defendant last specially named in the first paragraph, we think that "the said defendant" may be held to relate to him as the immediate antecedent.

As against him the second paragraph states a cause of action. It shows that, as between appellee and her husband, she was the owner of the land, although he held the legal title. Here again the paragraph is somewhat indefinite and argumentative, but sufficiently shows that appellant Carver did not purchase the land, or have any substantial interest in it; that under the false pretence of taking a mortgage to save the land to appellee, and to save her husband from arrest and imprisonment, he procured her signature to an instrument which is in form a deed, under which he is in possession, claiming the land as his own. It clearly states such a case of fraud as entitles appellee to have the deed set aside, and the title quieted in her. The paragraph does not make a case of trust, nor does it amount to a plea of *non est factum*.

The averment that she never executed a deed to William Carver is so limited by the other averments of the paragraph as to make it mean simply, that by reason of the alleged fraud the deed is invalid. *Woollen* v. *Whitacre*, 73 Ind. 198. The paragraph, we think, also states a cause of action against the other defendants therein named. As we have stated, in substance, it shows that appellee is the owner of the land therein described. As against those other defendants, it is stated that they claim and pretend to own some of the lots laid out by Carver. It is not shown what particular title they claim to have, nor from whom they acquired it, nor is it shown that they were or are in possession. In actions to quiet title it is not necessary to aver that the adverse claimant is in possession, nor is it necessary to set out in particular the na-

ture of his claim. It is sufficient if it appears that his claim is adverse to, or is a cloud upon, the plaintiff's title. Section 611, 2 R. S. 1876, p. 254; section 1070, R. S. 1881; *Marot* v. *Germania Building Ass'n,* 54 Ind. 37; *Gillett* v. *Carshaw,* 50 Ind. 381; *Arnold* v. *Smith,* 80 Ind. 417; *Dumont* v. *Dufore,* 27 Ind. 263; *Jeffersonville, etc., R. R. Co.* v. *Oyler,* 60 Ind. 383.

Those defendants knew better than appellee could well know what their title is, and to what particular portion of the real estate. The paragraph sufficiently shows that they are making claims adverse to appellee's title. It was a challenge to them to set up their claim or enter a disclaimer. Section 613, 2 R. S. 1866, p. 254; *Ulrich* v. *Drischell,* 88 Ind. 354; *Hose* v. *Allwein,* 91 Ind. 497.

If they were innocent purchasers from William Carver, and thus not affected by his fraud, they could have set that up, or produced evidence of the fact upon the trial.

The paragraph is not based upon the deed, and hence it was not necessary to set out or file a copy of it with the paragraph. *Stribling* v. *Brougher,* 79 Ind. 328. Against the other defendants not named in the paragraph, it states no cause of action, but being good as to those named, the joint demurrer by all the defendants was properly overruled.

The paragraph does not purport to be in ejectment, and we think it is not. It has none of the elements of such a complaint, either in the statement of facts or prayer.

We have, then, one paragraph for possession, and one to quiet the title. No question as to the misjoinder of causes of action was raised by the demurrer. The statute authorizes the joinder of claims to recover the possession of, and to quiet the title to, real estate. Section 70, 2 R. S. 1876, p. 68; section 278, R. S. 1881.

The jury returned the following verdict: "We, the jury, find for the plaintiff, and that she is the owner in fee simple and entitled to the immediate possession of the undivided one-third of the real estate in suit, and we assess the plaintiff's damages as against the defendant William Carver at the sum of

one hundred and twenty-five dollars." Upon the return of the verdict and answers to interrogatories, appellants moved for a *venire de novo,* on the ground that the verdict is defective, ambiguous and uncertain, as shown by the record. It is insisted here that the court below erred in overruling this motion.

The verdict is upon the whole complaint, and is a finding upon all the issues, against all of the defendants. There is nothing to show or indicate that it is based upon one paragraph alone. Buskirk Pr. 186. It is a finding, therefore, that appellee is entitled to the possession of the undivided one-third of the land as owner, and entitled to have her title quieted to the same. In this regard it is sufficient. In cases of this character it is not necessary that the jury should find upon each paragraph separately. See *Hershman* v. *Hershman,* 63 Ind. 451.

It is further contended that the verdict is ill, because the jury could not find that appellee was entitled to only a portion of the land described in the second paragraph. In that paragraph appellee asserts that she is the owner of the land therein described, and asks to have her title quieted thereto. We think that the jury had the right to find that she was entitled to have her title quieted to the undivided one-third of it, if the evidence justified such a finding. The general rule is, that any relief may be granted consistent with the case made by the complaint and embraced within the issues. Section 380, 2 R. S. 1876, p. 188; section 385, R. S. 1881; *Hunter* v. *McCoy,* 14 Ind. 528; *Board; etc.,* v. *Reynolds,* 44 Ind. 509 (15 Am. R. 245).

The statute in relation to the recovery of real property and the settling of conflicting claims thereto provided, and still provides, that where there are two or more plaintiffs or defendants, any one or more of the plaintiffs may recover against any one or more of the defendants the premises, or *any part thereof, or any interest therein,* or damages, according to the rights of the parties, but the recovery may not be for a greater interest than that claimed. Section 600, 2 R. S. 1876, p. 252;

section 1060, R. S. 1881. Clearly, under this section, a plaintiff suing for the possession of real estate may recover for any part of it, or any interest therein, whether a divided or undivided interest. It was, and still is, further provided that the rules prescribed in cases of ejectment shall be observed, as far as applicable, in actions to quiet title. Section 612, 2 R. S. 1876, p. 254; section 1071, R. S. 1881. They have been so applied. *Zimmerman* v. *Marchland*, 23 Ind. 474. We think it clear that under these sections title to an undivided interest may be quieted under a complaint asking the title quieted to the whole.

It will be observed that the verdict is that appellee is the owner of, and entitled to, the undivided one-third of the real estate "in suit." To ascertain the real estate in suit, we must look to the pleadings; in this case, to the complaint. In our abstract and consideration of the second paragraph, we have treated the real estate therein described as being the same as that described in the first paragraph. In considering the objections urged to the paragraph, it was not necessary to be more exact. The descriptions, however, are not necessarily, in all respects, the same. In the first paragraph it is averred that appellee is the owner of the W. ½, S. E. ¼, sec. 13, Tp. 21 N., R. 7 E., and also certain lots in the town of Alexandria, all in Madison county. The averment as to one of the defendants indicates that two of the lots had been carved out of the land, and are owned by him. Aside from this, the eighty acres seems to be intact. In the second paragraph the pleader refers to the land of which appellee had become and was still the owner, as " the said real estate described in the first paragraph of this complaint, to wit: " Immediately following this is a specific description, as follows, except the use of abbreviations: " The W. ½, S. E. ¼, sec. 13, Tp. 21 N., R. 7 E., *excepting* that part thereof which had at that time been laid off into town lots, as an addition to the town of Alexandria." There is also an assertion of the ownership of certain lots, substantially as in the first paragraph. We must

look to the specific description. The reference to the first paragraph can not, in any way, limit or extend it.

There is nothing in the paragraph to inform us what portion of the eighty acres of land had been laid off into town lots, whether much or little. That portion not laid off into lots was in "suit" under the second paragraph. The whole of it, with the inferential exception of two lots, was in " suit" under the first paragraph. If it be said that the second paragraph shows more of the land to have been laid off into lots than is shown by the first paragraph, then it may be said that the description in the first includes that in the second, as the whole includes the parts. The whole of the land then, as described in the first paragraph, was " the real estate in suit" included in the verdict. Thus, by a reference to the complaint, there is no difficulty in ascertaining what " the real estate in suit" is, and in rendering judgment upon the verdict.

In such case it can not be said that the verdict is ill for uncertainty and ambiguity, and that a *venire de novo* should be granted. There was no error therefore in overruling the motion. Whether the verdict is sustained by sufficient evidence, and whether the proper judgment was rendered upon the verdict, are different questions.

Two motions for a new trial were made; one by all of the defendants, and one by all except William Carver. Both were overruled. In the judgment the real estate is described as in the deeds in evidence, and substantially as in the second paragraph of the complaint. To the undivided one-third of that, the title is quieted in appellee, especially as against all claims under the deed introduced in evidence, which seems to be the deed mentioned in the second paragraph.

It is conceded by appellants in argument, that Ira Carver, husband of appellee, was the owner of the land described in the second paragraph of the complaint and in the judgment, prior to the 20th day of November, 1857, at which time he made a deed for the same to appellant William Carver. Their

whole claim rests upon the deed from him. It is really con-ceded, too, and shown by the evidence, that appellee, as the widow of Ira Carver, who died in 1875, if she did not join in that deed, is the owner of and entitled to the possession of the undivided one-third of the said real estate, except, perhaps, what may have been sold by Carver. It is con-tended, however, that she did join in that deed. Whether she did or not, is the main question of fact in the cause.

Prior to the trial, appellants served a notice on appellee, that upon the trial they would introduce in evidence the said deed, which bears the names of appellee and her husband as grantors. Upon the service of this notice, appellee filed her affidavit denying the execution of the deed.

Proof of execution having been made, which, to the trial court, was sufficient to entitle the deed to be read in evi-dence, it was so read.

The third instruction to the jury was as follows: "The defendants have read in evidence a deed purporting to be ex-ecuted by Ira Carver and plaintiff, Esther J. Carver, con-veying said real estate to the defendant William Carver. The burden of proving that the plaintiff * * executed said deed is upon the defendants, and if the defendants have not proved by a preponderance of all the evidence in the cause that said plaintiff did sign her name to said deed, the plaintiff is enti-tled to a verdict in her favor, no matter how innocent the de-fendants may have been in their purchase. If, however, you find that Esther J. Carver did sign her name to said deed then your verdict must be for the defendants, whether the deed bears the true date of its execution or not; and this must be your verdict, though the plaintiff, when she signed said deed, believed it to be a mortgage. You will then see that an important point in controversy is as to whether the plain-tiff signed said deed, and this you will determine, as well as all other facts submitted to you, from a careful consideration of all the testimony and circumstances in evidence, for you are the exclusive judges of the evidence and the credibility

·of the witnesses, and determine from the evidence what it proves and what it does not prove." Several objections are urged against this instruction. As related to the deed the argument is, first, that after appellants had made such a case as entitled the deed to be read in evidence, the burden of proof was shifted to appellee to prove the non-execution of the deed; second, that as the execution of the deed seems to have been acknowledged before an officer authorized to take acknowledgments, appellee can not, in this action, dispute the execution.

These two objections are so related that we consider them together.

The rule is well settled that in the absence of statutes upon the subject, the grantee, offering a deed in evidence, must prove its execution, whether it has been acknowledged and recorded or not; especially is this so if its execution is put in issue by a plea of *non est factum*. *Bowser* v. *Warren*, 4 Blackf. 522; *Doe, etc.,* v. *Vandewater*, 7 Blackf. 6; Greenl. Ev., Redfield's 1st ed., sections 557, 569; *Id.*, 2d ed., sections 293, 294, 300.

The statutes of this State, like those of many of the other States, have made material innovations upon this rule. The code of 1852, in force when this cause was tried, provided that where a writing, purporting to have been executed by one of the parties, is the foundation of, or is referred to in any pleading, it may be read in evidence on the trial of the cause against such party without proving its execution, unless its execution be denied by affidavit before the commencement of the trial, or unless denied by a pleading under oath. Section 80, 2 R. S. 1876, p. 75; section 364, R. S. 1881.

Section 216 of the revision of 1843, which extended the rule to all parties to an action, whether the writing purported to have been executed by them or not, was continued in force by section 802, code of 1852. *Belton* v. *Smith*, 45 Ind. 291.

Section 304, 2 R. S. 1876, p. 158, provided as follows: " If either party at any time before trial allow the other an in-

spection of any writing, material to the action, whether mentioned in the pleadings or not, and deliver to him a copy thereof, with notice that he intends to read the same in evidence on the trial of the cause, it may be so read, without proof of its genuineness or execution, unless denied by affidavit before the commencement of the trial." See section 478, R. S. 1881.

A failure to deny the execution by a pleading under oath has been held to be so far an admission of the genuineness of the instrument as to preclude its being controverted by proof. This rule would, perhaps, apply to a case like this where the denial is by affidavit. The reason of this ruling, as stated in the earliest decision upon the subject under these statutes, is that the party relying upon the instrument has a right to be forewarned of any contemplated attack upon it. *Unthank* v. *Henry County T. P. Co.*, 6 Ind. 125. The subsequent cases are based upon this. *Evans* v. *Southern T. P. Co.*, 18 Ind. 101; *Woollen* v. *Whitacre, supra.*

These statutes clearly include deeds, and recognize the rule as we have stated it to be, in the absence of statutes. Their purpose is not to shift the burden of proof, but simply to relieve the party relying upon a written instrument of the burden of making proof of its execution, unless the execution be denied under oath. It has been many times so decided. *Russell* v. *Drummond*, 6 Ind. 216; *Lucas* v. *Smith*, 42 Ind. 103. The affidavit, or plea of *non est factum*, throws back upon the other party the burden of proving the execution of the instrument, and thus the parties occupy the position they would have occupied were there no statutes upon the subject. *Pate* v. *First Nat'l Bank*, 63 Ind. 254; *Brooks* v. *Allen*, 62 Ind. 401; *Taylor* v. *Gay*, 6 Blackf. 150.

After making a *prima facie* case in favor of the execution of the writing, it may be read in evidence. The party making such proof may rely upon it, and in the absence of countervailing evidence, it will be sufficient to make his case. This, however, does not shift the burden of the issue to the

party denying the execution. In the case of *Fay* v. *Burditt,* 81 Ind. 433 (42 Am. R. 142), it was questioned, whether in any case, it is proper to say that the burden of an affirmative issue shifts in the course of a trial from one party to the other. We think, upon further consideration, that there is no hazard in saying that it does not as to any single proposition, such as to whether or not a written instrument was in fact executed by the party denying the execution. When the execution of an instrument is thus denied, the question is, did the party thus denying in fact execute it? The party relying upon it has the affirmative of that issue. The burden is upon him to establish that affirmative, and that burden will remain upon him until he establishes it to the satisfaction of the jury, not by a *prima facie* case alone, but by such proof as will withstand and overthrow all of the evidence to the contrary. There must be more than an equipoise of the testimony; there must be a preponderance in favor of the execution. If, upon the making of a *prima facie* case, the burden shifts to the other side, then it would follow that when the *prima facie* case is overthrown by weightier testimony, the burden shifts back again. To say that the burden thus shifts, is to say that it is constantly shifting from the stronger to the weaker side, as the testimony may make one side or the other stronger. Of course, when a *prima facie* case is made out in a case like this, the burden is upon the other side to meet it, or suffer defeat. As was said in the case of *Meikel* v. *State Savings Institution,* 36 Ind. 355: "This making out a *prima facie* case by the evidence, and thus casting the burden of meeting it on the other side, occurs in every-day practice."

It was said in the case of *Hayes* v. *Fitch,* 47 Ind. 21, that where a defendant has made out a *prima facie* defence, if the plaintiff would show matter in avoidance, the burden shifts upon him.

This imposition of the burden to meet a *prima facie* case, or to show matter in avoidance, is not the shifting of the burden of proof as to the fact in issue.

Appellants made their defence under the general denial, as they had a right to do under the statute. By introducing in evidence the deed from Williams to Ira Carver, appellee's husband, and the deed which purports to have been executed by appellee and her husband, they made their defence, as against appellee's claim, dependent upon the validity of the latter deed. The defence thus took the shape of an affirmative defence, a· defence of confession and avoidance; a confession of title in appellee as the widow of Ira Carver, and of avoidance, by the deed from her and husband to appellant William Carver. By the notice and affidavit in relation to this latter deed, the burden of proving its execution was clearly thrown upon appellants, and was not shifted from them by their making out a *prima facie* case.

The deed purporting to have been executed by appellee and her husband, apparently, was properly acknowledged and recorded. We can not hold, however, that the certificate of acknowldgement is conclusive upon appellee. To so hold, would put us in conflict with the cases of *Bowser* v. *Warren, supra; Doe* v. *Vandewater, supra; Mullis* v. *Cavins,* 5 Blackf. 77, and with our statutes upon the subject. We think, however, that under our statutes since 1852, a certificate of acknowledgment in proper form makes a *prima facie* case in favor of the execution of the instrument, not only as to innocent third parties, but as to the parties to the instrument also.

The statutes require that deeds shall be acknowledged. 1 R. S. 1876, p. 362, section 4; p. 364, sections 12 and 13; sections 2927–8 and 2947, R. S. 1881. To entitle a deed to be recorded it must be acknowledged. 1 R. S. 1876, p. 365, section 18; section 2933, R. S. 1881. When thus acknowledged and recorded in proper time, it is notice to the world, and when thus recorded, with the acknowledgment, exemplifications or copies of the record, and the record itself, are competent evidence against third parties, and the parties to the instrument, without the production of the original, or proof of its execution. 1 R. S. 1876, p. 367, section 30; 2 R. S.

1876, p. 150, section 283; sections 462, 2952, R. S. 1881; *Lyon* v. *Perry*, 14 Ind. 515; *Winship* v. *Clendenning*, 24 Ind. 439; *Bowers* v. *Van Winkle*, 41 Ind. 432; *Abshire* v. *State, ex rel.*, 53 Ind. 64; *Morehouse* v. *Potter*, 15 Ind. 477.

A record of a deed without such acknowledgment is not competent evidence against any one. 1 R. S. 1876, p. 367, section 30; section 2952, R. S. 1881; *Westerman* v. *Foster*, 57 Ind. 408.

An acknowledgment is not essential to the validity of a deed, as between the parties to it, but it is apparent upon an examination of the statutes that, as to all parties, it is a very important matter. It is essential to the record of a deed, and thus becomes the basis of notice by record. The deed may be recorded; the record becomes notice to the world, and may be used as evidence, without the production of the deed or proof of its execution, because the acknowledgment is evidence of the execution.

If we had no further statutes than those above mentioned, we might be inclined to follow the Illinois cases cited, and hold that, with certain limitations, it is conclusive evidence.

It is provided, however, that neither the certificate of acknowledgment of a deed, nor the record, nor the transcript of the record thereof, shall be conclusive, but may be rebutted, and the force and effect thereof contested by any one affected thereby. 1 R. S. 1876, p. 368, section 32; section 2954, R. S. 1881. The reasonable construction of these several sections of the statute is, we think, that the certificate of acknowledgment is *prima facie* evidence of the execution of the deed, and that in all cases where the record is competent evidence, the deed is also competent, without further proof of its execution. See Abbott Trial Ev. 175, 693.

This, however, does not throw the burden of proof upon the party denying the execution. In this case appellants produced the deed, asserting its genuineness. That was denied by appellee. Appellants had the affirmative of the issue, and

were bound to establish it by a preponderance of testimony or suffer defeat.   The certificate of acknowledgment operated as evidence in support of the genuineness of the deed, and made a *prima facie* case for appellants, very much as the presumption of sanity operates as evidence in behalf of the State in criminal prosecutions.  *McDougal* v. *State*, 88 Ind. 24.  The burden was upon appellee to meet and overthrow the *prima facie* case, but the burden was not upon her to prove the non-execution of the deed.   The court below did not err, therefore, in charging the jury that the burden was upon appellants to prove by a preponderance of the testimony that appellee executed the deed.   If it be conceded that the appellants, except William Carver, were innocent purchasers from him, yet, the instruction is correct, so far as the portion of it under discussion is concerned, because if appellee did not execute the deed, she is in no way bound by it, and as to her title did not pass by it.   *Mays* v. *Hedges*, 79 Ind. 288.

A third objection is urged to the instruction upon the ground that it directs and limits the attention of the jury to the simple question of the signing of the deed, and thus, in a measure, withdraws from them the more comprehensive question, as to whether the deed was in fact executed.

The argument is that a deed may be executed without an actual signing by the grantor, and our attention is directed to the case of *Nye* v. *Lowry*, 82 Ind. 316, where it was said: " The signature of the grantor in a deed, written by another at his request, or, though written without his knowledge, if adopted by him as his own, has the same validity as if written by his own hand—indeed, within the meaning of the law, it becomes his proper handwriting, and the deed so signed is of the same validity as if written by his own hand ; and the deed so signed, acknowledged and delivered, if subject to no other vice, is in all respects effective."

This is undoubtedly the law, and in all proper cases the jury should be so instructed.

As will be noticed upon an examination of the instruction

above set out, a portion of it is as follows: "And if the defendants have not proved by a preponderance of all the evidence in the cause that said plaintiff did sign her name to said deed, the plaintiff is entitled to a verdict in her favor. * * * You will then see that an important point in controversy is as to whether the plaintiff signed said deed."

After mature deliberation, we are of the opinion that there is no available error in this portion of the instruction as applied to the case. As has been seen, a deed purporting to have been executed by appellee and her husband to William Carver, was introduced in evidence to defeat her claim. If that deed was executed by her, she has no real claim. Upon the trial of the cause, appellee testified that she did not sign her name to the deed; that the signature thereto is not her signature, and that the first intimation she had that her name was upon the deed as grantor was when informed of it by William Carver, long subsequent to the date of the deed. No one saw her or claimed to have seen her sign it. The deed was delivered to William Carver by appellee's husband, apparently signed and acknowledged by her. Experts were examined *pro* and *con,* as to whether or not the signature was in fact her handwriting. During the trial no claim was made so far as shown by record, that any one signed appellee's name to the deed with her consent or knowledge, nor was there any claim so far as shown by the record, that any one signed her name without her knowledge, and that she afterwards adopted the deed as her own. Quite a number of witnesses testified that subsequent to the date of the deed, and after appellee and her husband had moved from the land, she told them that she and her husband had sold the land to William Carver. There was evidence too, that, subsequent to the deed, she held a note executed by William Carver for about $900, which she collected. William Carver testified that this note was given for the land. Appellee admitted that she held and collected the note, but stated that she did not recollect for what it was given. So far as shown by any

claim during the trial, this evidence was produced to show that she in fact signed her name to the deed, and not for the purpose of showing that any one signed it for her, at her request or with her knowledge, or that she adopted the deed after its execution.   The theory upon the one side seems to have been that appellee executed the deed by signing her own name, and upon the other, that she did not.   It was upon this theory, doubtless, and because no claim was made that the deed was otherwise executed, that the court gave the instruction.

When a theory is thus adopted, and acted upon below, with the concurrence of both parties, a judgment ought not to be reversed because the court instructs the jury in accordance with it.   *Graham* v. *Nowlin,* 54 Ind. 389.   Upon the theory as adopted and acted on below, it can not be said that the instruction was erroneous.   In legal parlance, appellee might have signed her name to the deed by authorizing another to write it for her.   If appellants wished a further explanation as to the mode of signing deeds, or if they claimed that there was evidence tending to show that appellee executed the deed by adoption, or by authorizing another to sign her name, they should have asked for a further and proper instruction, which they did not do.   *Burgett* v. *Burgett,* 43 Ind. 78 ; *Powers* v. *State,* 87 Ind. 144 ; *Ireland* v. *Emmerson,* 93 Ind. 1 (47 Am. R. 364) ; *Simpkins* v. *Smith,* 94 Ind. 470 ; *Pence* v. *Makepeace,* 65 Ind. 345.

In the last case, *supra,* there was a question as to whether the beneficiary of a policy of insurance had assigned it.   The court instructed the jury that in order to prove an assignment by the beneficiary, it must be proved that she signed her name to the assignment, etc.   It was objected that the instruction omitted "all mention of or allusion to the possibility of her signing by another, that is, authorizing some one to sign for her."   It was held that the objection was not available for the reasons : *First.* That no effort had been made to prove that she had authorized another to sign for her ; and,

*Second.* That if a fuller or further instruction was desired, it should have been asked for.

In the second instruction the court charged the jury as follows: "But the plaintiff further claims that if she can not recover the whole, she is entitled to the undivided one-third thereof by reason of being the surviving widow of said Ira Carver, who held the title thereto, while the plaintiff was his wife. There is evidence in the cause uncontradicted sufficient to entitle her to recover upon this claim, unless the evidence shows that she joined her husband in a deed conveying said real estate."

The argument against this instruction is: *First.* That the appellee made no such claim in the pleadings; and, *Second,* That it withdrew from the jury the question as to what the evidence was. We think that neither of these positions is tenable. In answer to the first objection, it is sufficient to say that it was not necessary that such claim should have been made in the pleadings. That such a claim was being made by appellee, may have been made known to the court as the evidence was being introduced, or by verbal statements. We have already seen that under a complaint for the whole of the real estate, appellee might recover a portion of it, or any interest therein. It would not have been improper for the court to charge the jury as to this rule of law, without any specific claim on appellee's part.

The second point has more of substance. In the first instruction the court charged the jury that appellee had failed to show that her husband, Ira Carver, had held the real estate in trust for her. The question of trust, as set up in the second paragraph, was thus eliminated from the case. This should be borne in mind in considering the second· instruction, *supra.* That appellee was the widow of Ira Carver; that he had held the legal title to the real estate; that he executed a deed for said real estate to appellant William Carver in 1857, and that whatever title appellants had or claimed was

through this deed, were facts about which there was no conflict of testimony, question or controversy. And thus there was no question that appellee was the owner of, and entitled to, the undivided one-third of the real estate, and to have her title thereto quieted as against appellants, unless she had joined her husband in conveying it away. When facts are thus established without controversy or opposing testimony, the court may instruct the jury as to the legal effect of such facts, and that they make or fail to make a case for one of the parties. *Dodge* v. *Gaylord,* 53 Ind. 365, and cases cited; *Moss* v. *Witness Printing Co.,* 64 Ind. 125, and cases cited; *Templeton* v. *Voshloe,* 72 Ind. 134; *Adams* v. *Kennedy,* 90 Ind. 318; Sackett Instructions to Juries, p. 17.

Mr. Thompson, in his work on Charging the Jury, at page 74, says: " But whilst it is improper for the judge to assume the existence of a fact in issue, yet, where the evidence is clear and conclusive as to the existence of the particular fact, and there is no evidence to the contrary, an instruction, assuming it as true, will not work a reversal of the judgment."

This brings us to the question of the sufficiency of the evidence. In the general verdict is included, necessarily, a finding that appellee did not execute the deed. The jury also found, in answer to interrogatories, that the only title appellants had or have to the real estate was, and is, through the deed from Ira Carver, appellee's husband, to William Carver, and that appellee did not execute that deed, nor any other, for her interest in the real estate. We can not reverse the judgment upon the ground that these findings are not sustained by sufficient evidence. Two deeds for the real estate were introduced in evidence, one from one Williams to Ira Carver, and one from Ira Carver to appellant William Carver.

Upon these deeds appellants relied to defeat appellee's claim. Whether or not she executed the deed to William Carver was the controlling question in the case. She testified positively that she did not execute that deed, nor any other, for her interest in the real estate. Upon that question the evidence was

sharply in conflict; that conflict was settled by the verdict in favor of appellee. Under the well settled rule this court can not disturb that verdict. If appellee did not execute the deed as found by the jury, then neither William Carver, nor any of the other appellants, had any title to or claim upon the undivided one-third of the real estate that could defeat her claim. If, as found, she did not execute the deed, it is immaterial as to whether or not any of the appellants, who were purchasers from William Carver, had notice of her claim before purchasing. If the case had turned upon a question of fraud in procuring the deed, the rule to be applied would be different.

With the finding of the jury that appellee did not execute the deed, there can be no doubt that every element of the case was made out as against William Carver. Such being the case, the joint motion for a new trial by all of the appellants was properly overruled. A joint motion for a new trial will be overruled if not well taken as to all joining in it. *First Nat'l Bank* v. *Colter,* 61 Ind. 153; *Robertson* v. *Garshwiler,* 81 Ind. 463; *Feeney* v. *Mazelin,* 87 Ind. 326.

As we have seen, a motion for a new trial by all of the defendants except William Carver was also overruled. Here, again, if the motion was not well taken as to all of the parties joining in it, it was properly overruled. As to some of the appellants, there was no proof that they were in the possession of any portion of the real estate, or that they claimed to own any portion of it. As we have seen, however, they all joined in an answer of general denial and made defence. This, under the statute, was such an admission of possession on their part as relieved appellee of the necessity of proving them to be in possession.

It is provided by section 1056, R. S. 1881, which is the same as section 597, 2 R. S. 1876, p. 252, that where, in a case like this, the defendants make defence, it shall not be necessary to prove them in possession. Where the possession of the defendants is thus established, and the right of recovery

on the part of the plaintiff is shown, the possession is so far shown to be unlawful, as to throw upon the defendants the burden of showing their possession to be rightful. Nothing of the kind was attempted here, except the effort to show that appellee executed the deed to William Carver. *Holman* v. *Elliott*, 86 Ind. 231; *Voltz* v. *Newbert*, 17 Ind. 187; *Dobbins* v. *Baker*, 80 Ind. 52.

As to some of the appellants, it was shown by such evidence as the jury had the right to act upon, that they were in the possession of a portion of the real estate, claiming to own it as purchasers from William Carver. As against them appellee was clearly entitled to recover, if, as found by the jury, she did not execute the deed to William Carver. As to them the motion for a new trial was properly overruled, and because properly overruled as to them, it was properly overruled as to all joined with them in the motion. There was, therefore, no available error in overruling the motion for a new trial by the appellants except William Carver.

Other questions are discussed by counsel for appellants with much earnestness, but as they are covered by what we have already said, we do not extend this opinion to notice them separately. The judgment is affirmed, with costs.

Filed Oct. 16, 1884.