**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 24 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PHILLIP A. NORMAN**
**JENNIFER L. SNOOK**
Marinosci Law Group, P.C.
Valparaiso, Indiana

ATTORNEY FOR APPELLEE:

**JAY CURTS**
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

REVERSE MORTGAGE SOLUTIONS, INC.,   )
                                    )
   Appellant,                       )
                                    )
   vs.                              )   No. 29A05-1212-ES-660
                                    )
THE SUPERVISED ESTATE OF            )
RICHARD C. HOLMAN,                  )
                                    )
   Appellee.                        )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Richard T. Payne, Senior Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D03-1009-ES-122

**September 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Reverse Mortgage Solutions, Inc. ("Reverse Mortgage"), the mortgage lien holder of residential real estate owned during his lifetime by Richard C. Holman ("Holman"), appeals from the probate court's order denying its motion to vacate its prior order granting the successor personal representative's petition to approve the sale of the residential real estate and close the Supervised Estate of Richard C. Holman ("The Estate").

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 7, 2010, Holman executed a promissory note in favor of Urban Financial Group for the sum of $225,000.00 and a mortgage on residential property located in Noblesville, Indiana. Urban Financial Group then assigned the mortgage to Reverse Mortgage. Under the terms of the promissory note, Holman's death triggered a default on the loan. Holman passed away on August 10, 2010, and The Estate was opened on September 22, 2010. At the time of his death, Holman owed $105,722.88 on the promissory note plus accrued unpaid interest and accruing interest and late fees.

Reverse Mortgage commenced its foreclosure action on August 31, 2011, but no proceedings occurred in that action beyond service of process, and the action ultimately was dismissed on March 28, 2013 by operation of Indiana Trial Rule 41(E) for failure to prosecute. Meanwhile, on August 9, 2012, The Estate filed a petition to approve the sale of the residential property and close the supervised estate as insolvent. The Estate sought approval from the probate court to sell the property for $100,000.00, a sum insufficient to satisfy the mortgage lien held by Reverse Mortgage. In support of its request, The Estate

2

cited to existing market conditions. The residential property had been appraised at a fair market value of $135,000.00, an appraisal that was arguably too high, and after forty showings, had received an offer as high as $92,000.00 before negotiations stalled. The original personal representative had allowed the interior of the residence to deteriorate, and a significant investment would be necessary although impractical to repair it such that a higher offer could be possible. The Estate had entered into a purchase agreement[1] for the sale of the residential property for $100,000.00 and requested that the probate court approve a 3% variance on payments made from the proceeds of the sale to the lienholders.

> The petition to approve the sale included the following request:

> 10. The Successor PR requests that any and all lien holders on the Residence, including, but not limited to, Reverse Mortgage Solutions, Inc., Secretary of Housing and Urban Development, and South Harbour Homeowners Association, Inc., be ordered to release their mortgages and/or liens against the Residence upon the Court's approval of this Petition and their insured receipt of proceeds from the closing of this sale.

*Appellee's App*. at 3.

On August 10, 2012, the probate court issued an order setting the matter for a hearing to be held on August 28, 2012. The chronological case summary reflects a certified mail receipt returned on August 15, 2012, acknowledging delivery of the trial court's August 10, 2012 order to Reverse Mortgage. Reverse Mortgage filed no response to the petition and took no other action. The hearing was held as scheduled. Neither Reverse Mortgage nor any other creditor appeared at the hearing. On August 29, 2012,

---

[1] The Estate entered into a purchase agreement with Seth and Shina Rawlings. An attorney for the Rawlingses has entered an appearance in the appeal as an interested party, but otherwise does not participate in this appeal.

the probate court granted the petition and entered an order approving the sale and closure of the Estate. The order directed that Reverse Mortgage release the mortgage lien it held on the residential property and provided for the appointment of a commissioner to execute required lien releases in the event the lien holders failed to comply.

The Estate sent a copy of the probate court's order approving the sale of the residential property and closing The Estate to Attorney Beng, counsel for Reverse Mortgage. The Estate also sent a copy of the probate court's order to Reverse Mortgage on two different occasions, and, in the second communication, relayed the closing date for the sale. Reverse Mortgage refused to release its lien as directed, and the commissioner appointed by the probate court executed the lien release as authorized by the order of sale.

On October 3, 2012, Reverse Mortgage filed a motion to vacate the probate court's order approving the sale of the residential property, contending that it was not required to file a claim in the probate action, but could continue solely via mortgage foreclosure proceedings. The probate court held a hearing on the motion to vacate and issued its order denying Reverse Mortgage's motion. Reverse Mortgage now appeals.

## DISCUSSION AND DECISION

Reverse Mortgage contends that the probate court had no jurisdiction over Reverse Mortgage or its interest in the residential property. More particularly, Reverse Mortgage asserts that "the trial court did not attempt to acquire personal jurisdiction, pursuant to Ind. Code section 29-1-15-12, over Reverse Mortgage Solutions until after the court in the foreclosure action had obtained exclusive jurisdiction." *Appellant's Br.* at 3. We

4

disagree.

More than seventy years ago, our Supreme Court stated, "When a foreclosure suit is instituted, the court in which it is pending has jurisdiction of the foreclosure, which is the subject matter, but that suit does not clothe the court with exclusive jurisdiction of the real estate." *Morris v. Buchanan*, 220 Ind. 510, 515, 44 N.E.2d 166, 168 (1942). Here, the title to the real estate was at all times in the name of the decedent Richard C. Holman, and possession of the real estate was in the personal representative. The court in which the foreclosure suit was pending had jurisdiction, but, as in *Buchanan*, that jurisdiction was not exclusive.

Ind. Code § 29-1-15-12 provides as follows:

> *Upon any petition to sell* or mortgage *real property* the court shall have power to investigate and determine all questions of conflicting and controverted title, remove clouds from any title or interest involved, and invest purchasers or mortgagees with a good and indefeasible title to the property sold or mortgaged. When the petition to sell or mortgage seeks such relief notice shall be given as in civil actions of like nature and *the court is authorized to issue appropriate process and notices in order to obtain jurisdiction to so proceed against adverse parties*.

[Emphasis added.]

Reverse Mortgage was notified of the hearing on the petition to sell the residential property. Upon receipt of such notice, it became subject to the probate court's jurisdiction.[2] The notice identified the time period in which an objection to the sale, if any, should be filed. Having the opportunity to appear, to defend its position and to oppose the sale of the property, Reverse Mortgage made no such objection, took no

---

[2] Reverse Mortgage made no claim to the trial court and makes no claim on appeal that the notice of the hearing was not adequate or was not properly served.

action in response to the Notice of sale, and failed to appear or defend. Having failed to do so, Reverse Mortgage may not now complain about the procedure employed in the subsequent sale of the real estate. As a result, we find that the probate court did not err in denying Reverse Mortgage's motion to vacate the order to sell the real property.

In *Bradford v. First National Bank,* 90 Ind. App. 342, 164 N.E. 494 (1929), the devisees challenged the administration of the estate of their aunt, who died testate, contending that a person pretending to be their aunt's creditor fraudulently petitioned for the bank to serve as the administrator of their aunt's estate. They alleged that the creditor falsely asserted that their aunt had died intestate. As a result of the creditor's claim, the administrator was required to sell real property that had been left to the devisees after the payment of her debts, if any, to satisfy the creditor's claim. The devisees had not sought to have the will probated for some time after their aunt's death, though knowing of the will's existence. The administrator filed a petition with the probate court seeking permission to sell the real property in order to satisfy the estate's debts. The devisees received notice of the petition to sell the real property and were made defendants to the action to answer to any interest they might have in the real estate. After receiving notice of the hearing, the devisees did not attempt to probate their aunt's will and the real estate was ultimately sold with the court's permission after the devisees failed to appear for the hearing on the petition.

The devisees then filed a complaint against the creditor and the administrator claiming fraud. The complaint sought to revoke and set aside the administration of their aunt's estate in order to probate her will and to enjoin the sale of the real property. We

6

concluded as follows:

> Such report of said administrator would have shown the order of sale, which sale under such order appellants seek to enjoin. So far as appears by the record, the order was a valid order; appellants were made parties to the petition for such order of sale, were duly notified thereof, but, upon the hearing, made default. If there were no debts of the estate of Charity Jones, and therefore no necessity for the sale of said real estate, as averred in the complaint, this would have been a valid defense at law against the petition for such sale, which appellants might have presented by way of answer to the petition for sale. But they remained silent. Having had their opportunity to present their defense at law, and a valid order having been entered for the sale of said real estate, such order is final as to all defenses which appellants might have presented. *Parker v. Obenchain,* 140 Ind. 211, 39 N.E. 869; *Bates v. Spooner,* 45 Ind. 489; *Carver v. Carver*, 97 Ind. 497.

164 N.E. at 496.

We express no opinion on whether the order granting the successor personal representative's petition to approve the sale of the residential real estate and close the Supervised Estate of Richard C. Holman issued by the probate court was proper. We note only that it had jurisdiction over the parties and the subject matter of the action. Reverse Mortgage was afforded the opportunity to appear and to be heard on the matter. If the order was erroneous, its remedy would have been a timely appeal of such order. Having failed to appear, defend, or appeal, Reverse Mortagage cannot now contest the merits of that order. *See State ex rel. Allman v. Superior Court for Grant County*, 19 N.E.2d 467 (Ind. 1939); *State ex rel. Dean v. Tipton Circuit Court*, 181 N.E.2d 230 (Ind.1962). *See also Blake v. Blake,* 391 N.E.2d 848 (Ind. Ct. App. 1979). The trial court did not err in denying the Motion to Vacate. Affirmed.

VAIDIK, J., and PYLE, J., concur.