Reinhabd, J.
The appellee sued the appellant in the Gibson Circuit Court to recover the proceeds of an insurance policy on the life of her deceased husband, of which policy she was the alleged beneficiary. The venue of the cause was changed to the Knox Circuit Court. The appellant filed an answer in eleven paragraphs, to each of which a demurrer was sustained, and upon appellant’s *337 refusal to plead further, judgment was rendered in favor -of the appellee for $2,994.78. The ruling of the court upon the demurrer is the only error relied upon.
Some of the paragraphs of the answer are in the nature of set-offs, based upon a provision in the policy which permits the appellant to deduct certain indebtedness from the insurance money. The provision just referred to reads as follows:
“In case of the death of the insured prior to the maturity of this policy, the same being in force, the company will pay the amount herein named within sixty days after receipt of notice and satisfactory proof of death, the balance of the year’s premium, if any, and all other indebtedness being first deducted.”
It is alleged in the paragraphs referred to that at the time of death of ^Jre insured, Isaac Woods, he was indebted to the company for borrowed money in an amount -equalling that of the insurance, and it is asked that this ■debt be set off against and deducted fróm the amount of the insurance designated in the policy.
The policy provides that the company, in consideration of “the annual payment of'the sum of $161.04 at the home office of the company, on or before the 19th ■day of October, at noon, in every year during the term of fifteen years, does insure the life of Isaac Woods, of Princeton, in the county of Gibson, State of Indiana, in the sum of $3,000 for the term of his natural life, or until prior maturity, for the benefit of the insured if living at the maturity of this policy. In case of the death of the insured prior to such maturity, said amount of insurance shall be payable to Mary E. Woods, his wife, if living, otherwise to the executors, administrators, or assigns of the insured.”
Whether the appellant was entitled to set off the *338 amount loaned, the insured in his lifetime depends upon the terms of the contract and the meaning of the language “all other indebtedness” therein contained.
The facts pleaded show that the loan of $2,300 by the company to the insured was not made until some time after the issuing of the policy, and that it was effected partly to enable the insured to pay the premiums and to revive the policy which he had suffered to lapse, when the loan was made, though the greater portion was not for that purpose.
We see no valid reason why an insurance company and an applicant for life insurance may not enter into a binding agreement to the effect that the company will undertake to loan the insured a sum of money as well as to insure his life, and that the money loaned is to be deducted from the proceeds of the pq^cy at the time of the maturity thereof. Such a contract is not in violation of the principle of indemnity upon which insurance is generally based, for the money may be needed for the payment of premiums and other purposes to enable the insured to secure the full benefit of such insurance. Hence, if the contract in suit had provided in terms for a loan of money, and a repayment of the same out of the proceeds of the insurance, we think such a provision would be binding upon all parties, although the policy be written for the sole benefit of the wife. It is true that in ordinary life insurance, where the wife of the insured is the beneficiary, the title of the policy vests in her immediately upon execution and delivery thereof, and no arrangement between the company and the insured affecting the interest of the wife in the insurance money, which is not provided for by the terms of the policy itself, will be binding uponher. Harley, Admr., v. Heist, 86 Ind. 196; Pence, Admr., v. Makepeace, 65 Ind. 345; Bliss Life Ins. (2d ed.), p. 517, section 318.
*339 We think it is otherwise, however, where the policy expressly provides for a restriction or limitation of the wife’s interest, or makes it depend upon a future contingency, such as an arrangement for a loan of money from the company to the husband and a repayment of the same out of the proceeds of the policy, when due. Whatever may be considered the true consideration underlying the insurance, the wife can not be said to possess a greater interest in the policy than is given her by the terms thereof. When she acquires the title to the •same, upon execution and delivery, she takes such title burdened with all its conditions and limitations. She can receive no more insurance, in other words, than the insured has contracted for in her behalf. If the insured has, therefore, stipulated for a loan to himself, to be paid out of the insurance money when it becomes due, by an acceptance of the policy she assents to the deduction of such loan from such proceeds, and she can not afterwards be heard to deny the company’s right to make such deduction.
It is not claimed, however, in the present case, that the policy in terms provides for a loan of money to the insured and the repayment of the same out of the insurance money, nor is there, in point of fact, such a stipulation. What the appellant does contend is that the provision in the policy permitting the company to deduct from the amount of the insurance money the balance of the year’s premiums, "and all other indebtedness,” is broad enough to confer upon the company the right to make such a loan to the insured and secure itself by withholding an equal amount from the proceeds of the policy at maturity.
It must be conceded, we think, that if the policy was one the ownership of which was and remained in the insured to the time of his death, he was at liberty to' use *340 and dispose of the same in any manner that seemed proper to him. Pie could pledge it as security for his individual debts, and could in various ways incumber or divest his interest therein at pleasure. He could contract with the company for a loan of money, and would have the right to assign the policy to the company to secure the loan. But even if he did not make such an assignment, we are inclined to the view that if the policy was legally his property, or the title was such that he could pledge or assign the policy, he could contract for any legitimate indebtedness to the company subsequently to the execution of the policy, and that the provision to deduct “all other indebtedness” would entitle such company to deduct such loan from the insurance, as in that case it is easily seen that the parties could be held to have contemplated just such an arrangement, and thus provided for it in the contract of insurance.
The policy contains the statement that it is written “for the benefit of the insured, if living at the maturity” thereof. The word maturity here obviously refers to the maturing of the policy during the lifetime of the insured. It provides that if the premiums are paid during the term of fifteen years, and other conditions complied with, and the insured is then living, the insurance 'shall be paid to Isaac Woods. If, however, the latter should die during the fifteen years, such insurance was to become payable to Mary E. Woods, his wife, if living, otherwise to the executors, administrators or assigns of the insured.
It is insisted on behalf of the appellant that the policy was one of endowment. “An endowment policy is an insurance into which enters the element of life. In one respect it is a contract payable in the event of a continuance -of life; in another, in the event of death before *341 the period specified.” Anderson’s Law Dic., p. 401. Endowment insurance provides for the payment of the sum insured to the person insured if he live to a certain time, or, if he die before that time, to some other person nominated in the policy. Bliss on Life Ins., 2 ed., p. 6, section 6.
Such a policy is in many of its characteristics, respecting the rights of the parties under it, different from an ordinary life policy procured by a husband for the sole benefit of his wife. In a policy of the kind last mentioned the wife acquires the absolute title upon its execution, and she becomes its owner the same as if it were a note or other chose in action payable to her, and hence no act of her husband or the insurance company, without her concurrence or assent, can deprive her of such title to or interest in the policy, if its conditions have been complied with; while if the policy be one of endowment, payable to the husband, if living at the end of the endowment period, or to the wife, if the insured should die during such period, and she be then living, the title to the policy does not vest absolutely in the wife upon the execution of the policy, nor, indeed, until the husband’s death, during such period, and the husband retains at least a qualified interest in and title to the policy during his lifetime.
Assuming that the policy in suit is one of endowment, payable ,to the husband if living at its maturity, and to the wife in case of his death during the period of endowment, the question arises: In whom was the title to the policy at the time of its execution and delivery? The appellant’s position is that in such a case the wife acquires no interest in the policy whatever unless or until the husband dies during the period of the endowment, and that the husband, as the insured and primary beneficiary, has the absolute control of the policy as long as he lives *342 and may dispose of the same as he may deem proper. On the other hand, the appellee contends that as soon as the policy was executed and delivered she acquired such an interest in the same as prevented the insured from transferring, incumbering or in any manner affecting the insurance adversely to her, and that inasmuch as the policy was not subject to transfer or incumbrance of any kind by the husband, the “indebtedness" spoken of in the policy could not have referred to a loan, as the parties can not be presumed to have contemplated a restriction of the contractual rights of the wife in the absence of an express stipulation to that effect.
The question is one of importance, and not free from difficulty. We have given it a careful consideration, and after an examination of the authorities cited by counsel, and such others as we were able to find, we have been led to conclude that the law upon this question is with the appellee. In a certain sense, it is true, she may be said to have no interest in the policy until her husband -s death, for it is upon this contingency that her interest depends. But in another sense she does have an interest in the policy from the time of its delivery, although it be only a contingent interest, and one which may or may not become absolute. Of this interest, contingent though it may be, she can not be divested without her consent. Had the insured lived until after the maturity of the policy, a disposition of or incumbrance upon the policy or the insurance might have been valid as against him, but he had neither the right nor the power to divest his wife of that interest with which by his previous act the law had invested her. When the policy was executed and delivered, its title vested not in Isaac Woods alone, but in him and the appellee both. Each had only a conditional title, depending upon the contingencies provided for in the contract of insurance. The title *343 of each was in the whole policy, and so remained until after the time the loan was made to Isaac Woods by the appellant, though it is also true that under the terms of the policy the interest of the appellee might, in a certain contingency, have become divested subsequently, upon the happening of the event mentioned in the policy. Continental, etc., Life Ins. Co. v. Palmer, 42 Conn. 60, 19 Am. R. 350.
In the case of Fowler v. Butterly, 78 N. Y. 68, the policy was on the life of the insured “until the 6th day of September, 1882, or until his decease, in case of his death before that time.” In the latter event the proceeds of the policy were to be paid to the wife of the insured, if living, otherwise to his daughter. By the terms of the policy the insured would have been entitled to receive the money, had he lived until after its maturity, but in case of his death during the endowment period, the insurance was to go to his wife, if living.
The ipsured having died during the endowment period, suit was brought upon the policy. It was shown that the insured, in life, had assigned the policy, in which assignment the wife had attempted to join. The assignment by her was held void as not having been duly executed. The assignment by the husband was held not to convey the title, the wife having, upon the delivery of the policy, acquired a direct interest in the same, which could be transferred only by an assignment duly executed. These cases, we think, are in point, and they meet with our approval. The authorities relied upon by appellant’s counsel do not support their position.
The case of New York Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, is certainly far from it. In that case the insurance was payable to the assured or his assigns, on the 8th day of December, 1897; or, if he should die before that time, to his legal representatives. It was held that *344 an assignment of the policy by the insured passed the title to the assignee, the insured having died in 1878. The manifest purpose of such insurance could be for the benefit of the insured only. It was a chose in action, owned by him, and which he had a right to alienate at pleasure, under proper, circumstances.
The text quoted by counsel for appellant, from May on Insurance, section 390, does not support their contention, although it would seem, at first blush, to do so. That author says, in speaking of an endowment policy such as we assume the one in the present case to be: “The wife’s rights do not attach till the death of the husband, within the time limited.” The “rights” here spoken of, have reference, we think, to her rights in the money—the proceeds of the policy. This is true in a sense, and, in a similar sense, the husband’s rights do not attach until the period of endowment has expired. Both the context and cases cited by the author convince us that the contention of the appellee’s counsel as to the application of the sentence that the interest does not attach till the happening of the event provided for is the correct one. At 'all events, the text, as interpreted by appellant’s counsel, does not commend itself to our approval, and is not supported by authority. We are of opinion that none of the authorities relied upon sustain the appellant upon this point, but if they did, we should nevertheless be inclined to follow the cases holding the opposite view, as they are, it seems to us, grounded upon sound principles and sustained by reason and judgment. •
If, therefore, Isaac Woods had no'power or right to dispose of the policy in suit, by assignment or pledge, it can not be held that the parties to the original contract of insurance could have contemplated a loan from the company to said Woods upon the faith and credit of the policy.
The only provision under which the right to the'set-off *345 is claimed, as we have seen, is the one which allows the company to deduct from the proceeds of the policy “the balance of the year’s premium, if any, and all other indebtedness to the company.” In giving construction to contracts containing ambiguous language, the courts will look to the situation and acts of the parties, and the end sought to be accomplished. The application for the insurance discloses that the name of the person in whose favor the insurance was to be effected was Mary E. Woods, and that she was the wife of the applicant.
The policy shows that she was a beneficiary, and that in case of Isaac Woods’ death during the period of endowment she alone was entitled to the insurance. We think it manifest from these facts, that the purpose of the insurance was indemnity to the wife in case she should outlive the husband during the fifteen years.
To hold that under these circumstances the parties intended by their contract to provide for a loan to Isaac Woods would be doing violence to the evident purpose of the insurance. Unquestionably the parties must be deemed to have meant something by the insertion of the provision permitting the deduction of “all other indebtedness.” One class of indebtedness that was to be deducted was clearly expressed in the contract, viz., “the balance of the year’s premium.” What did the parties intend should be deducted in addition to the balance of the year’t premium left unpaid? It can certainly not be true th. the parties contemplated any other indebtedness than at connected with the subject of insurance with reference to which they were contracting. If the term was to include all indebtedness, then the appellant might with propriety, have purchased a note or other chose in' action which the insured owed some third party and set it off against the policy. The indebtedness that must naturally have *346 been anticipated between the insurer and insured was such as arose from the premiums upon which the insurance was based, and it is our opinion that this is the kind of indebtedness meant by the term employed in the policy. This does not necessarily mean cash premiums which had become due. But the parties had a right to arrange for the payment of the premiums by note or notes, and as the giving and acceptance of such would continue the policy in force notwithstanding the indebtedness for such premiums, it is easy to conceive how the insured might be indebted to the company for such premiums at the time of his death or .the maturity of the policy. It seems to us that this construction is the more rational one, and clearly tends to carry out the evident purpose of the contract, while it fully secures the appellant in all its rights within the letter and spirit of the same. Moreover, in adopting this construction, we do no more than to give effect to the rule so universally recognized and followed by the courts of this country, that where indemnity is the object for which the insurance is effected the contract must be liberally construed to that end, and when the language of the policy is equally susceptible of two interpretations, the one giving greater indemnity and sustaining the claim will be adopted. May Ins. (3d ed.), sections 174, 175.
Our conclusion upon this question is that the court correctly sustained the demurrer to those answers which attempted to set off the unpaid balance of the judgment held by the appellant against Isaac Woods, against the appellee’s claim on the policy in suit.
Other paragraphs of the answer are based upon the alleged assignment of the policy by Isaac Woods and his wife, Mary E. Woods, the appellee, to the appellant company, to secure the debt of Isaac Woods to the company.
For the reasons heretofore stated, we think the assign *347 ment of Isaac Woods was void; and as to the assignment of the appellee, she being a married woman, and the assignment being to secure a debt of her husband, it was void also. R. S. 1894, section 6964.
It is, however, contended on behalf of the appellant that under the averments of the eleventh paragraph of the answer the assignment must be held sufficient “upon the theory that the policy being an Ohio contract, and the assignment being a mere incident to the policy, both the policy and assignment are to be construed according to the laws of Ohio; and, further, that the assignment is a chattel mortgage of the insurance money, the situs of •which is in Cincinnati, Ohio, and that.the assignment is therefore to be construed by the laws of Ohio, and that by the laws of that State the assignment is valid.”
It is true that the policy itself is an Ohio contract and governed by the laws of that State, but this rule has no application to the contract of assignment which, though made by indorsement on the policy, is yet a separate and distinct contract from that of the policy. An insurance policy is a chose in action, for a chose in action is an instrument upon which may be founded a right of proceeding in a court to procure the payment of money. Vawter v. Griffin, 40 Ind. 593 (601).
The policy being a chose in action, it may be assigned in the same manner as a note, bill of exchange or account. The assignment transfers the ownership or interest of the assignor. In the case of a note, or bill of exchange governed by the law merchant, the assignor, in addition to transferring his interest in the debt, impliedly obligates himself that the instrument is genuine, that he is the owner of the same, and that the maker will pay it when due. An assignment of a policy, like an assignment of an open account, does nothing more than to transfer the property. The assignment of a chose in *348 action is governed by tbe law of the place where the assignment is made. Rose v. Park Bank, 20 Ind. 94; Rose v. President, etc., 15 Ind. 292.
Under the rules of the common law, the assignment or transfer of a chose in action was forbidden as in violation of the law against maintenance and champerty, and because the vendor could not sell a thing he did not then really have but which he only expected to obtain at some future time. Co. Lit., 266a.
*But this ancient rule has long since been disregarded in the courts of equity, and not only dioses in action, but mere possibilities, expectancies and things in esse may be assigned, and such assignments will be enforced in equity, and the assignee will acquire the property by the assignment. 1 Am. and Eng. Encyc. of Law, 827.
Our statute recognizes the right of assignment of any claim or chose in action, not only in writing, but by simple delivery of the thing assigned, but unless the assignment is by indorsement in writing, the assignor must be made a party defendant in a suit by the assignee upon the claim. R. S. 1894, section 277; Lynam v. King, 9 Ind. 3; Cole v. Merchants’ Bank, etc., 60 Ind. 350; Strong v. Downing, 34 Ind. 300.
We do not think that in this State an assignment of a policy of insurance is governed by any rule of law different from those obtaining in cases of assignment of choses in action generally. The validity of any contract must depend upon the law of the place where it is made. If the appellant has any assignment it must be by reason of the contract by which the same was effected. That contract was made in Indiana and not in Ohio.
The case of Lee v. Abdy, 17 L. R., Q. B. Div., 309, is precisely analogous. In that case the suit was by the assignee of a life policy issued by an English company. The assignment was made at Gape Colony, where the as *349 signor and assignee both resided at the time. By the laws of Cape Colony the assignment was void, though valid under the law of the place where the policy was issued. It was held that the law of Cape Colony governed, as the contract of assignment was made there, and the assignment was, therefore, adjudged to be void.
To the.same effect is Prentice v. Steele, 4 Montreal L. R. (Superior Ct.) 319, where it was expressly decided that the assignment of a life policy, which is a chose in action, is governed by the law of tho place where it (the assignment) was made, and not by the law of the place where the policy was issued or the insurance is payable. And to the same effect is Miller v. Campbell, (N. Y. App.) 35 N. E. Rep. 651, where a Massachusetts corporation had issued an endowment policy insuring a husband’s life for fifteen years, payable to the wife, if living, in case of the husband’s death during the endowment period, which was assigned by the husband and wife, who resided in New York. It was held that the laws of New York governed the validity of the assignment.
We hold, therefore, that the law of Indiana controls the assignment in suit, and by that law the assignment is void.
It is next contended, as we have seen, that the assignment of the policy constitutes a chattel mortgage for the security of Isaac Wood’s debt to the company, and that .as the chattel which was mortgaged, i. e. the insurance money, was in the State of Ohio, where a married woman may become surety for her husband, the law of Ohio must govern, and the assignment, or mortgage, must be held valid. The contention is based upon the clause in the assignment which undertakes to set over the policy •"and all sum or sums of money that may become due by virtue thereof,” etc.
Counsel for appellant insist that "chattel mortgages *350 are governed by the same rules of interpretation as totlieir validity, nature, and obligation as contracts relating to and affecting the title of real estate,” and that the appellant not having sought this forum to enforce the contract, but having been brought here by the appellee, in invitum, “the appellee will not be allowed to use the courts of this State to enforce the policy against the defendant, and to repudiate her mortgage of that policy to the defendant.”
If we should concede that the attempted assignment of the policy amounts to a mortgage on personal property in Ohio, and that the same law must be applied as if it were a mortgage on land in Ohio, and that the appellant is entitled to have the controversy settled by the interpretation of the courts of that jurisdiction, we apprehend the appellant would fare no better, for in a very recent case decided by the Supreme Court of that State it was held that a mortgage executed in Indiana by a married woman domiciled in this State, on real estate in Ohio, to secure an obligation as surety to be performed in Indiana, where she is without capacity to make such a contract, is void in Ohio -as well as in Indiana. Evans v. Beaver, 33 N. E. Rep. 643.
But we need not decide what would be the proper rule if the transaction in question were a mortgage. It is not a mortgage, and the words quoted above do not stamp it with that character. In the written transfer itself, it is denominated an “assignment” four times, and what it undertakes to do is to “assign, set over and transfer” the policy. The appellee and her husband owned a chose in action, represented by the policy. This chose in action was for money to become due in Ohio. We apprehend that if a person residing in Indiana, who holds a note or claim against a citizen or corporation in Ohio, and attempts, by indorsement, to *351 “assign, set over and transfer” such note or claim “and all sums of money that may become due by virtue thereof,” it would hardly be claimed that this was a mortgage on the money to become due in Ohio, and that although the transfer of the note might be void so as to retain the legal title of the same in the assignor, yet that an interest in the money in Ohio would be conveyed to the .assignee. We regard the position of appellant’s counsel (that the attempted transfer of the policy, though void as an assignment, is still valid as a chattel mortgage) as utterly untenable. It is the policy that constitutes the chose in action attempted to be transferred, and the situs of the policy is the domicile of the owner, and by the laws of the place where the transfer was made or attempted to be made, the contract must be controlled. Crouse v. Phœnix Ins. Co., 14 Atl. Rep. 82.
The third and last defense set up by the appellant is contained in the remaining paragraphs of the answer, and presents the question whether the company may, after failure of the insured to pay the premium, enforce its collection, and also insist upon a forfeiture of the policy, when the policy provides for a forfeiture upon failure to pay such premiums when due and that the default in payment shall entitle the company to treat the premium as earned.
It is disclosed by the pleadings, and conceded in argument by appellant’s counsel, that the premium note, for the nonpayment of which the forfeiture is claimed, was afterwards merged into a judgment taken by the company against Isaac Woods, in which other notes due the company for a loan were also involved, and that more than enough of the judgment to cover the note in question was subsequently made out of the said Isaac Woods’ property which had been mortgaged to secure the same' and said other notes, although it is averred in some of *352 the paragraphs, that the money collected was applied by the company to the payment of the loan.
The parties doubtless had a right, by the insurance contract, to provide for a forfeiture of the policy by reason of failure to pay the premiums or any of them. The appellant had the right to insist upon this condition in the policy, and to claim a forfeiture upon failure of the insured to comply with the same. But it is also the settled law that the right to insist upon a forfeiture may be waived by the insurer, and that such waiver may be manifested through the conduct, as well as through the words, of thejnsurer. Phenix Ins. Co., etc., v. Tomlinson, 125 Ind. 84.
Forfeitures are not favored, and the law will be strictly construed to defeat them, although they will be upheld if the conditions underlying them are strictly complied with by the insurance company.
In the present case, the company had received the premium,—had enforced its collection by suit, when the insured died, for it is not insisted that the appellant had the right to apply the money realized on the foreclosure proceedings to the extinguishment of the $2,300 loan, which was not yet due, in preference to the premium debt, then past due. The failure to declare a forfeiture was not a waiver, as the policy provides that upon failure of the insured to comply with any condition in the policy, the same was to become null and void, without any action on the part of the company, or notice to the insured or beneficiary. But we are of opinion that the enforced collection of the premium after forfeiture, or what would have been a forfeiture, constituted a waiver, and this is true, we think, notwithstanding any provision in the policy that the premium thus collected should be considered as having been earned. Michigan Mut. Life Ins. Co. v. Custer, 128 Ind. 25; Phenix Ins. *353 Co. v. Tomlinson, supra; Mutual Life Ins. Co. v. French, 30 Ohio St. 240.
Filed April 20, 1894.
From what we have said, it must be apparent that our views of the law coincide throughout with those of the court below, and that, in our judgment, no error was committed in sustaining the demurrer to the several paragraphs of the answer.
Judgment affirmed.